STATE of Minnesota, Appellant,

v.

Eric NMN KROMAH, et
al., Respondents,

Charden Marlowe Gomez, Respondent.

No. C8–02–1034.

Supreme Court of Minnesota.

Feb. 24, 2003.

Michael A. Hatch, Minnesota Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Patrick C. Diamond, Sr. Assistant County Attorney, Minneapolis, MN, Stephen L. Redding, Sr. Assistant County Attorney, Minneapolis, MN, for Appellant.

Leonardo Castro, Chief Fourth District Public Defender, Patrick Sullivan, David Murrin, Assistant Hennepin County Public Defenders, Minneapolis, MN, Caroline Durham, Minneapolis, MN, for Respondents.

## OPINION

BLATZ, Chief Justice.

The state appeals a pretrial district court decision suppressing DNA evidence in eight separately charged cases involving different defendants and offenses.[1] For ease of reference, these eight defendants will be referred to as the "Kromah, et al., defendants." The court concluded that the DNA testing methodology, known as PCR–STR, and the kits that utilized the PCR–STR methodology were "generally accepted in the scientific community and that the BCA [Minnesota Bureau of Criminal Apprehension] lab's matches have foundational reliability" as required under the *Frye–Mack* test.[2] Nonetheless, relying on the Minnesota Court of Appeals decision in *State v. Traylor*, 641 N.W.2d 335 (Minn.App.2002), the district court concluded that the DNA evidence was inadmissible because the BCA did not comply with the Technical Working Group on DNA Analysis Method (TWGDAM) guidelines. The state contends that the district court's conclusion was in error and that the DNA Advisory Board (DAB) standards complied with by the BCA have superseded the TWGDAM guidelines. We reverse, and remand to the district court for further proceedings consistent with our holding in *State v. Traylor*, No. C6–01–244, 656 N.W.2d 885 (Minn.2003).

The Kromah, et al., defendants have been charged with an array of crimes including murder, criminal sexual conduct, kidnapping, and assault. In each case, blood or semen samples were taken and the DNA analysis performed by the BCA allegedly connected each defendant to a

1. The following eight cases have been joined for purposes of this appeal: *State v. Kromah*, No. 01092843 (Hennepin County Dist. Ct. June 19, 2002); *State v. Gomez*, No. 01031426 (Hennepin County Dist. Ct. June 19, 2002); *State v. Wilson*, No. 02007849 (Hennepin County Dist. Ct. June 19, 2002); *State v. Newman*, No. 02020774 (Hennepin County Dist. Ct. June 19, 2002); *State v. Szutz*, No. 01104493 (Hennepin County Dist. Ct. June 19, 2002); *State v. Johnson*, No. 01080426 (Hennepin County Dist. Ct. June 19, 2002); *State v. Gurneau*, No. 02013492 (Hennepin County Dist. Ct. June 19, 2002); and *State v. Dahlin*, No. 01004420 (Hennepin County Dist. Ct. June 19, 2002).

2. In Minnesota a two-pronged standard, known as *Frye–Mack*, must be satisfied before DNA evidence may be admitted. The first prong of the *Frye–Mack* standard, general acceptance in the relevant scientific community, looks at whether experts in the field widely share the view that the results of scientific testing are scientifically reliable. *State v. Roman Nose*, 649 N.W.2d 815, 819 (Minn.2002). The second prong, foundational reliability, examines whether the laboratory conducting the tests in the individual case complied with appropriate standards and controls. *Id.*

victim or a crime scene. It is this evidence that the state intended to introduce at trial that is the subject of this appeal.

Based on the court of appeals decision in *Traylor*, each of the Kromah, et al., defendants brought a pretrial motion to suppress the DNA evidence. The eight cases were joined for the purpose of conducting a combined *Frye–Mack* pretrial hearing. Because the grounds for the defendants' motions to suppress involved all the issues raised in *Traylor*, the court granted the state's motion to supplement the record with the exhibits and transcripts from the *Traylor* hearing.

At the conclusion of the *Frye–Mack* hearing, the district court granted the defendants' motion to suppress the DNA evidence. The court based its ruling on the court of appeals holding in *Traylor* that the TWGDAM guidelines must be followed.[3] Because the district court determined that the TWGDAM guidelines required the primer sequences to be known to the scientific community at large and because the primer sequences were not known, the court concluded that the BCA's testing procedures were not in compliance with the TWGDAM guidelines. It is from this decision that the state petitioned our court for accelerated review in an effort to join the *Kromah, et al.*, cases with the *Traylor* case. We granted the state's petition but did not consolidate the *Traylor* and *Kromah, et al.*, cases. Instead, we heard and considered the cases contemporaneously.

■ The threshold issue that we must address in a pretrial appeal is whether the state has demonstrated that the suppression of the DNA evidence will have a critical impact on the outcome of the trial.

*State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). "Critical impact is met when the suppression of the evidence significantly reduces the likelihood of a successful prosecution." *In re Welfare of L.E.P.*, 594 N.W.2d 163, 168 (Minn.1999) (citing *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn.1987)). The Kromah, et al., defendants contend that the state has not made a showing of critical impact, and therefore, review by this court is improper.

■ Review of the record reveals that the facts are not sufficiently developed for us to conclude that the suppression of the DNA evidence significantly reduces the likelihood of a successful prosecution in each of these cases. Nonetheless, the issue in each of these cases—the suppression of DNA testing using the PCR–STR methodology—is identical to the issue in *State v. Traylor*, 641 N.W.2d 335, 341 (Minn.App.2002), *rev. granted* (Minn. May 14, 2002). Important to our consideration to grant the petition for accelerated review in the first instance was our expectation that the record in the joined cases, which was developed two years after the record in *Traylor*, would provide a more complete and updated record for our review in deciding the complex issues surrounding DNA testing. For this reason and in the interest of judicial economy, we exercise our inherent authority to review these eight cases in this particular and unique situation.

■ We turn to the next issue of whether the district court erred in suppressing the DNA evidence in these eight cases. Treating the court of appeals decision in *Traylor* as *stare decisis*, the district court examined the BCA's compliance with the TWGDAM guidelines and ruled that the

---

**3.** Though the district court noted that it was not bound by the court of appeals decision in *Traylor* because we had granted review, the district court nonetheless considered the decision as *stare decisis*.

TWGDAM guidelines were not met. Because compliance with the TWGDAM guidelines is not mandated, we reverse and remand the matter to the district court for further proceedings to determine if the BCA has complied with the appropriate standards and procedures for DNA testing. *See State v. Traylor*, No. C6–01–244, 656 N.W.2d 885 (Minn.2003)

Finally, in addition to contesting the admissibility of the DNA evidence, the Kromah, et al., defendants contest the district court's findings regarding the presentation of the DNA statistical evidence. The state contends the defendants waived this issue because they did not cross-appeal the district court's ruling on the presentation of statistical evidence or cross-petition when the state filed its petition for accelerated review. We agree with the state and decline to address the issue at this stage in the proceeding.

Nonetheless, we encourage district courts to be mindful of the impact of quantitative probability statistics on DNA analysis. In *State v. Joon Kyu Kim*, we disallowed the admission of quantitative statistical probability evidence, recognizing the danger that a jury may equate such evidence with the likelihood that the defendant was guilty. 398 N.W.2d 544, 548–49 (Minn.1987). Although in *State v. Bloom* we provided a DNA exception to the *Kim* rule that quantitative statistical probability evidence is inadmissible, we did so without overturning *Kim.* 516 N.W.2d 159, 167–68 (Minn.1994). Thus, courts need to be fully cognizant of the

potentially prejudicial nature of the statistical probability evidence and ensure that DNA identification evidence is not presented in a misleading or unfairly prejudicial way.[4] *Bloom*, 516 N.W.2d at 168–69.

Reversed and remanded.

HANSON, J., took no part.

---

4. The potentially prejudicial or misleading nature of DNA evidence is of increasing concern with the current DNA identification techniques. Because of the number of loci that can now be tested, the traditional probability statistical methods yield statistics such as one out of the world's population or one in 800 billion. *See State v. Thoms*, No. C0–01–1373, 2002 WL 1420724 at *1 (Minn.App. July 2, 2002), *rev. denied* (Minn. Sept. 17, 2002); *Whitfield v. State*, 346 Ark. 43, 56 S.W.3d 357, 358 (2001). With numbers of this magnitude, district courts should be mindful of the potential impact such numbers may have on jurors and take steps to ensure that the presentation of the statistical evidence is not unfairly prejudicial or misleading.