**STATE of Minnesota, Respondent,**

v.

**Matthew Philip ANDERSON, Appellant.**

**No. A03–290.**

Supreme Court of Minnesota.

July 29, 2004.

---

Robert L. McCormick, University Student Legal Service, Minneapolis, for appellant.

Mike Hatch, Atty. Gen., St. Paul, Jay M. Heffern, Minneapolis City Atty., Julie Delgado-O'Neil, Asst. Minneapolis City Atty., Minneapolis, for respondent.

## OPINION

MEYER, Justice.

A police officer conducted a traffic stop of Matthew Anderson, the appellant, for violating Minn.Stat. § 169.18, subd. 11 (2002), which requires motorists to move "a lane away" from stopped emergency vehicles. During the stop, the officer obtained evidence that was used to charge Anderson with Impaired Driving in the Fourth Degree in violation of Minn.Stat. §§ 169A.20, subd. 1(5), and 169A.27, subd. 1 (2002). Anderson moved to suppress the evidence, claiming that the police officer who stopped him lacked a "particularized and objective basis" for suspecting him of criminal activity because Anderson had, in fact, moved a lane away from the stopped emergency vehicle. The district court suppressed the evidence of impaired driving because it concluded that Anderson was not actually violating Minn.Stat. § 169.18

(2002) when he was stopped. The court of appeals reversed and held that an officer's reasonable interpretation of a statute, whether erroneous or not, may form the basis for an investigatory traffic stop. *State v. Anderson*, 671 N.W.2d 900, 904 (Minn.App.2003). We reverse the court of appeals and reinstate the decision of the district court.

In this case we must decide two issues: (1) Did Anderson fail to move a lane away from the lane where the police officer's car was stopped, and thus violate Minn. Stat. § 169.18, subd. 11? If yes, the traffic stop was legal and the evidence of impaired driving was properly seized; and (2) If Anderson was not in violation of Minn.Stat. § 169.18, subd. 11, may the officer's mistaken belief about the correct interpretation of a traffic law form the particularized and objective basis for suspecting him of criminal activity required to justify a traffic stop?

On February 7, 2003, a University of Minnesota police officer stopped a motor vehicle traveling eastbound on University Avenue S.E. near Walnut Street in Minneapolis. At this location, University Avenue is a one-way street with three lanes of traffic and a paved bicycle lane next to the right curb. The vehicle pulled over to the right and stopped close to the curb. The officer stopped his squad car behind the stopped vehicle with the squad car's emergency lights activated. In doing so, his squad car partially occupied the right lane of traffic. The officer exited his squad car and went to talk to the driver of the stopped vehicle. As the officer was walking back to his squad car from the stopped vehicle, he observed a motor vehicle approaching on University Avenue in the center lane. This vehicle, driven by the appellant Matthew Anderson, had signaled a lane change and moved into the center lane to avoid the officer and his squad car.

Believing that Anderson's vehicle passed too close to him and his stopped squad car, the officer immediately entered his squad car, pursued Anderson, and initiated a traffic stop. The officer informed Anderson that the reason for the stop was the officer's belief that Anderson was in violation of Minn.Stat. § 169.18, subd. 11. He believed that Anderson was in violation of this law because he thought it was illegal for Anderson to pass the stopped squad car without allowing "a buffer lane of traffic" between the two vehicles.

In the course of speaking to Anderson, the officer formed the belief that Anderson was intoxicated and, therefore, a breath test was administered. The results of the test, combined with an admission by Anderson, led the officer to arrest Anderson for impaired driving. The state charged Anderson with Driving While Impaired in the Fourth Degree, in violation of Minn.Stat. §§ 169A.20, subd. 1(5) and 169A.27, subd. 1 (driving with a blood alcohol content of .10 or more). He was not charged with violating Minn.Stat. § 169.18, subd. 11.

Anderson made a motion to suppress the evidence obtained by the officer as a result of the traffic stop, claiming that the officer based the stop on an incorrect interpretation of Minn.Stat. § 169.18, subd. 11, and, therefore, the officer lacked an objective basis to stop Anderson. The district court found that the squad car was stopped completely within the right-hand lane. The court concluded that Minn.Stat. § 169.18, subd. 11, does not require motorists to provide a buffer lane between themselves and parked emergency vehicles. The court concluded that the officer misinterpreted the statute and, therefore, suppressed the evidence of impaired driving because the officer lacked an objective basis for the stop. The court of appeals reversed. *State v. Anderson*, 671 N.W.2d 900, 904 (Minn.App.2003). The court stated that the statute was ambiguous, the officer's interpretation of that ambiguous statute was reasonable, and that that interpretation provided an objectively reasonable basis to stop Anderson. *Id.* at 903–04. We granted Anderson's petition for review.

I.

■ This case comes to us on an appeal of a district court's pretrial suppression order. When the state appeals such an order, it must show that the ruling was erroneous and that it will have a "critical impact" on its ability to prosecute the case. *See State v. Kromah*, 657 N.W.2d 564, 566 (Minn.2003). The parties in this case do not dispute that, if upheld, the district court's suppression order will have a critical impact on the state's case. *Anderson*, 671 N.W.2d at 902.

■ The first question is whether Minn.Stat. § 169.18, subd. 11, requires motorists to provide a buffer lane between themselves and parked emergency vehicles. Statutory interpretation is an issue of law that we review de novo. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Our canons of statutory construction demand that we "construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999) (citing Minn.Stat. § 645.08(1) (2002)). When the text of a law is plain and unambiguous, we "must not engage in any further construction." *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn.2002); *see also* Minn.Stat. § 645.16 (2002). Therefore, we must first examine the statute to determine if any ambiguities exist. *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 672 (Minn.

2003). A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *Id.*

Minnesota Statutes § 169.18, subd. 11, reads as follows:

> When approaching and before passing an authorized emergency vehicle that is parked or otherwise stopped on or next to a street or highway having two or more lanes in the same direction, the driver of a vehicle shall safely move the vehicle *to a lane away from the emergency vehicle.*

(emphasis added). At the suppression hearing, the officer offered his interpretation of the statute:

> It is my interpretation of the * * * law that when an emergency vehicle is on the side of the road, either with its emergency lights activated or not, if there is an opportunity for a vehicle to give a buffer lane between that emergency vehicle and the driver's car an open lane should be opened so that an officer has a safety zone.

The district court rejected the officer's interpretation of the statute and concluded that the statute unequivocally requires drivers to move to "the next lane over from where the police car is stopped." In reversing the district court, the court of appeals concluded that Minn.Stat. § 169.18, subd. 11, could mean "either in the next lane or a full lane away," and, therefore, was ambiguous. *Anderson,* 671 N.W.2d at 904. The state notes that the word "away" has several dictionary definitions and, therefore, argues that we should affirm the court of appeals' holding that the statute is ambiguous.

■ We do not agree with the court of appeals that the phrase, "a lane away" is ambiguous. The state is correct to point

out that the word "away," when standing alone, has several meanings. However, a reading of the phrase "a lane away" that parses the individual words from each other detracts from the plain meaning of the phrase as a whole. *See Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1,* 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974) ("words of a statute are to be viewed in their setting, not isolated from their context.") When the phrase "a lane away" is viewed as a whole, its "natural and obvious usage" is clear; it means "in the lane next to" the stopped emergency vehicle.[1] *See Amaral,* 598 N.W.2d at 384.

The parties agree that Anderson's vehicle was completely within the center lane of traffic, the lane *next to* the lane occupied by the officer's stopped squad car. Therefore, Anderson was not in violation of Minn.Stat. § 169.18, subd. 11, when the officer conducted the traffic stop.

## II.

We next decide whether a police officer's mistaken interpretation of the law may constitute the particularized and objective basis for suspecting criminal activity required to make a traffic stop. The district court concluded that the officer did not have an objective legal basis for the stop. The court of appeals held that because the statute was ambiguous, the officer's interpretation of the ambiguous statute was reasonable and, therefore, he had an objectively reasonable basis to stop Anderson. *Anderson,* 671 N.W.2d at 904.

■ In general, the state and federal constitutions allow an officer to conduct a limited investigatory stop of a motorist if the state can show that the officer had a "particularized and objective basis for sus-

---

1. If, as the state contends, the legislature intended for motorists to provide a buffer lane, it would have drafted the legislation to say that motorists must "provide a buffer lane" or "provide a lane between the vehicle and the emergency vehicle."

pecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985). In order to justify such an investigatory stop, "the police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike*, 551 N.W.2d 919, 921–22 (Minn.1996) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop. *State v. George*, 557 N.W.2d 575, 578 (Minn.1997).

In *George*, a trooper stopped a motorcycle because it appeared to have three headlights, which was believed by the officer to be a violation of a Minnesota statute that allowed no more than two headlights. *Id.* at 576. However, a separate statute allowed motor vehicles to carry up to two "auxiliary driving lamps." *Id.* at 578. According to a rule promulgated by the Department of Public Safety, the lights on the defendant's motorcycle were properly classified as "auxiliary passing lamps." *Id.* The defendant moved to suppress the evidence seized pursuant to the stop, arguing that the officer lacked an objective legal basis for the stop because the motorcycle had a legal configuration of headlights. *Id.* The state argued that the stop was not the product of "whim, caprice, or malice" because the trooper stopped the defendant for having a headlight configuration that appeared to be illegal. *Id.* We held that, because the defendant's headlight configuration was legal, the officer lacked an *objective* basis for suspecting the defendant of illegal activity. *Id.*

In this case, the state argues that because the officer stopped Anderson for conduct that the officer *believed* to be illegal, the stop was not a product of "whim, caprice, or idle curiosity" and therefore constituted a reasonable stop. According to the state, *George* is distinguishable as a case in which the officer's interpretation of the law was contrary to clearly established law. *See George*, 557 N.W.2d at 578 (listing statute and rule contrary to the trooper's interpretation of the headlight law). The state argues that, unlike the officer in *George*, the officer here could articulate a basis for the stop that was based on a subjectively reasonable interpretation of a law that had not yet been interpreted by the appellate courts.

Anderson, on the other hand, argues that our holding in *George* was not dependent on the officer's subjective belief, but rather on the correctness of the officer's conclusion that the defendant was violating the law. According to Anderson, when *George* is read in this way, it is indistinguishable from the case before us and mandates that we reverse the court of appeals.

■ We agree with Anderson's reading of our case law. Decisions of this court and the United States Supreme Court focus not on the subjective belief of the officer, but rather on the objective basis for the belief that the defendant was engaged in illegal activity. *See Cortez*, 449 U.S. at 417–18, 101 S.Ct. 690; *George*, 557 N.W.2d at 579. In *George*, we did not inquire into the reasonableness of the trooper's belief that the defendant violated the law. *See* 557 N.W.2d at 578–79. Rather, the fact that the trooper was incorrect in his factual and legal assessment of the defendant's motorcycle was sufficient for us to conclude that he lacked a reasonable suspicion that the defendant was violating the law. *Id.* Therefore, we

hold that an officer's mistaken interpretation of a statute may not form the particularized and objective basis for suspecting criminal activity necessary to justify a traffic stop.

We do not question the good faith of the officer in stopping Anderson for conduct the officer believed to be illegal. We emphasize that whether made in good faith or not, the officer was mistaken in his interpretation of Minn.Stat. § 169.18, subd. 11, and therefore he lacked a particularized and objective basis for stopping Anderson. *See Berge*, 374 N.W.2d at 732. Because no objective basis existed for the stop, we hold that the district court was correct in excluding evidence obtained pursuant to that stop.

Reversed.