**In the Matter of the WELFARE OF E.S.C.**

**No. A06–707.**

Court of Appeals of Minnesota.

May 8, 2007.

Karl E. Robinson, Special Assistant State Public Defender, Winthrop & Weinstine, P.A., Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge; KLAPHAKE, Judge; and SHUMAKER, Judge.

WILLIS, Judge.

Appellant challenges the district court's order requiring her to undergo a blood test for the human immunodeficiency virus (HIV). Because we conclude that the district court has no statutory authority to order such a test, we reverse and remand.

## FACTS

On February 28, 2006, St. Paul Police Officer Jesse Mollner and Probation Officer Yolanda Galvan were executing juvenile-arrest warrants. A caller had reported that appellant E.S.C., one of the juveniles whom the officers were looking for, was at a house in St. Paul. Upon arriving at the house, the officers were let in by E.S.C.'s sister. Officer Mollner went to the basement, where he found E.S.C. hiding behind a sheet. As Officer Mollner attempted to place E.S.C. under arrest, she became combative, punching the officer and yelling that she was not going to go to jail. Officer Mollner put E.S.C. in handcuffs and was escorting her out of the basement when E.S.C. bit the officer in the upper right arm.

Officer Galvan went to the basement to assist Officer Mollner. The officers were able to get E.S.C. to her feet, and as they moved E.S.C. toward the stairwell, she turned and spat in Officer Galvan's face. Officer Mollner reported that he saw that "the majority of the spit struck [Officer Galvan's] eyes, mouth, and nose." By affidavit, Officer Galvan stated that E.S.C.'s saliva made contact with her eyes and was close to her nose and mouth. E.S.C. was taken from the house to juvenile detention.

On March 1, 2006, the state brought a petition against E.S.C. in juvenile court, alleging that E.S.C. had committed fourth-degree assault of a peace officer, in violation of Minn.Stat. § 609.2231, subd. 1 (2004); and fourth-degree assault of a corrections agent, in violation of Minn.Stat. § 609.2231, subd. 3 (2004). E.S.C. admitted the charges. At the disposition hearing, the state moved the district court on behalf of Officer Galvan for an order requiring E.S.C. to undergo a test for the

human immunodeficiency virus (HIV), arguing that because of E.S.C.'s pregnancy, it was clear that she had been sexually active and that there was, consequently, a risk that she was infected with HIV. E.S.C. opposed the motion, arguing that the state had failed to establish a sufficient basis for the test. The district court granted the state's motion and, as part of its disposition order, directed that E.S.C. undergo an HIV test but also ordered that the result be delivered to the court for in-camera review. Blood was drawn for the test on March 9, and the result was delivered to the district court.

On March 14, E.S.C. moved to stay the district court's order. The state responded that the motion was moot because the test had already been performed. In addition, the state offered the affidavit of a state public-health epidemiologist, who stated that although "HIV infection as a result of mucous membrane exposure (including tissue around the eye) to the saliva of a person infected with HIV is *extremely* unlikely," it is "mathematically possible." The epidemiologist further opined that "possible exposure to HIV generates anxiety and stress for the person potentially exposed."

The district court granted E.S.C.'s motion and stayed disclosure of the test result. In its memorandum of law, the district court noted that although Minn.Stat. § 611A.19, subd. 1(a) (2004), provides for HIV testing if a juvenile is adjudicated delinquent of one of several enumerated sex offenses or violent crimes, the list of offenses does not include Minn.Stat. § 609.2231 (2004), the assault statute that E.S.C. violated. The district court sealed the test result, and this appeal follows.

### ISSUES

I. Is this appeal moot?

II. Did the district court have the authority to order that E.S.C. undergo an HIV test?

### ANALYSIS

### I.

 The state argues that because E.S.C. has already submitted to the HIV test, this appeal is moot. E.S.C. replies that the appeal is not moot because the result of the test has not been disclosed. Minnesota courts decide only actual controversies and do not issue advisory opinions. *In re McCaskill,* 603 N.W.2d 326, 327 (Minn.1999). A matter is in controversy only if it involves the definite and concrete assertion of a right—a hypothetical injury is not sufficient. *Kahn v. Griffin,* 701 N.W.2d 815, 821 (Minn.2005). If on appeal an event occurs that renders granting effectual relief impossible, the matter becomes moot, and the appeal will generally be dismissed. *State v. Brooks,* 604 N.W.2d 345, 347 (Minn.2000).

The state relies on *State v. Brown,* 597 N.W.2d 299 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999), in which the defendant bit the victim several times, and the district court ordered that the defendant undergo an HIV test. *Id.* at 302. On appeal, the defendant argued that the district court lacked the authority to order him to undergo an HIV test. *Id.* at 305. Noting that the test had already been performed, this court held that the defendant's appeal was moot. *Id.* But as E.S.C. notes, there is no indication in *Brown* that the test result had been sealed pending appeal. Here, the result has been sealed, and there is effectual relief that this court may grant: the destruction of the test result. We therefore conclude that E.S.C.'s appeal is not moot.

## II.

■ E.S.C. argues that the district court lacked the statutory authority to order the HIV test and that the district court's order violates her Fourth Amendment and privacy rights under the federal and Minnesota constitutions. Specifically, E.S.C. argues that neither Minn.Stat. § 260B.198, subd. 1 (2006), which governs juvenile dispositions, nor any other statute authorizes this test. The construction of a statute is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). When construing a statute, this court must first determine whether the text of the statute is ambiguous, that is, whether the statute is reasonably subject to more than one interpretation. *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). If the text of a statute is unambiguous, this court must give effect to the plain meaning of the statute. *State v. Anderson,* 683 N.W.2d 818, 821 (Minn. 2004). But if the text of the statute is ambiguous and construction of the statute is required, our goal is to ascertain and effectuate the legislature's intent. *Am. Family Ins.,* 616 N.W.2d at 278. The words and phrases of a statute are construed according to their basic and ordinary meanings, and the statute is construed as a whole with each section read in light of the other sections. *Id.* at 277.

The state concedes that section 260B.198, subdivision 1, does not expressly authorize an HIV test as a disposition in a juvenile matter; rather, the state argues that the list of dispositions in section 260B.198, subdivision 1, is not exclusive. We disagree. The purpose of a juvenile disposition is to "promote the public safety and reduce juvenile delinquency" by "developing individual responsibility for lawful behavior." Minn.Stat. § 260B.001, subd. 2 (2006). Section 260B.198, subdivi-sion 1, provides that if the district court adjudicates a juvenile delinquent, "it *shall* enter an order making *any of the following* dispositions ... which are deemed necessary to the rehabilitation of the child." (Emphasis added.) The statute is not ambiguous. The qualification of "any of the following" is a limitation on the possible dispositions that a district court may impose. Thus, if the statute does not provide for a given disposition, that disposition is not authorized. *Cf. In re Welfare of J.L.Y.,* 596 N.W.2d 692, 696 (Minn.App. 1999) (noting that the district court has wide discretion to select any disposition authorized by statute), *review dismissed* (Minn. Feb. 15, 2000).

The state argues that if the list of dispositions in section 260B.198, subdivision 1, is exclusive, the district court would be without authority to order community service or to impose a no-contact order as a disposition. But section 260B.198, subdivision 1(b), grants the district court broad authority to place a juvenile on probation, subject to conditions that are for the benefit of a juvenile's "physical, mental, and moral well-being and behavior," which permits a district court to require community service or impose a no-contact order as a condition of a juvenile's probation if community service or the no-contact order would benefit the juvenile.

The state argues further that HIV testing is a form of restitution, which is authorized by section 260B.198. *See* Minn. Stat. § 260B.198 (2006). Restitution in juvenile cases is governed by both the restitution provision in section 260B.198, subdivision 1(e), and the general restitution statute, section 611A.04. *See* Minn.Stat. § 611A.04 (2006); *In re Welfare of D.D.G.,* 532 N.W.2d 279, 282 (Minn.App.1995) (providing that in case of conflict, the general restitution statute controls), *review denied*

(Minn. Aug. 30, 1995), *and abrogated on other grounds by State v. Palubicki,* 727 N.W.2d 662, 667 (Minn.2007). Restitution is an authorized disposition in a juvenile matter if a juvenile's actions cause injury to a person or damage to property. Minn. Stat. § 260B.198, subd. 1(e). The general restitution statute, in Minn.Stat. § 611A.04, subd. 1(a), provides that a

> request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime, including medical and therapy costs, replacement of wages and services, expenses incurred to return a child who was a victim of a crime ... to the child's parents or lawful custodian, and funeral expenses.

Whether a particular item fits within the statutory definition of restitution is a question of law, which this court reviews de novo. *State v. Esler,* 553 N.W.2d 61, 63 (Minn.App.1996), *review denied* (Minn. Oct. 15, 1996).

The texts of the restitution statutes do not support the state's argument that requiring an HIV test is a form of restitution. Section 611A.04, subdivision 1(a), for example, requires a victim to submit an affidavit listing the total dollar amount claimed as restitution, and section 260B.198, subdivision 8, provides that should a juvenile fail "to *pay* the restitution in accordance with the *payment schedule* or structure," the district court may hold a hearing to determine whether the juvenile violated the terms of her probation. (Emphasis added.) Requiring a victim to establish the total dollar amount claimed as restitution and imposing a "payment schedule" on the juvenile are compelling indications that restitution is limited to pecuniary compensation to the victim and does not include requiring a juvenile to undergo an HIV test. *See State v. Colsch,* 579 N.W.2d 482, 484 (Minn.App.1998) (holding that restitution is limited to economic losses).

Finally, as we noted above, there is a statute that authorizes a district court to order an HIV test in certain circumstances, which, the state concedes, are not present here. As applied to juvenile offenders, Minn.Stat. § 611A.19 (2006), authorizes the district court to order that a juvenile undergo an HIV test if (1) the juvenile is adjudicated delinquent of one of several enumerated sex offenses or violent crimes, (2) the victim requests or acquiesces to the test, and (3) there is evidence that the victim's broken skin or mucous membrane came into contact with the juvenile's blood or semen "in a manner which has been demonstrated epidemiologically to transmit the human immunodeficiency virus (HIV)." By establishing these requirements, the legislature has balanced a juvenile's privacy interest against a victim's interest in determining the HIV status of her assailant. In effect, the state asks us to upset the balance struck by the legislature either by adding an offense that the legislature did not include to the list of qualifying offenses or by permitting the district court to order an HIV test in circumstances other than those specified in the statute. We do not have that authority. *See State v. Hulst,* 510 N.W.2d 262, 264 (Minn.App.1994) (providing that the court could not add to a statute's list of convictions for which refusing to take a chemical test would result in license revocation because the court cannot supply language that the legislature omitted).

We are not without sympathy for the probation officer, and if the legislature agrees with the district court that "the protection [accorded to] public employees and taxpayers by ordering test outweighs" the minimal intrusion that E.S.C. suffered as a result of the test, it can amend section 611A.19 to include section 609.2231 in the

list of qualifying offenses. Until it does so, and unless otherwise authorized by section 611A.19, the district court has no authority to order an HIV test as a disposition in a juvenile-delinquency proceeding. Having determined that the district court was without statutory authority to order the test here, we do not reach E.S.C.'s constitutional arguments.

### DECISION

Because an HIV test is not an authorized disposition in a juvenile matter, and because section 611A.19 does not apply here, the district court had no authority to order that E.S.C. undergo an HIV test. We reverse and remand with the instruction that the district court destroy E.S.C.'s HIV test result without disclosing it.

**Reversed and remanded.**