*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1202**

State of Minnesota,
Respondent,

vs.

Tyler Thomas Devries Morse,
Appellant.

**Filed June 22, 2015
Reversed
Minge, Judge***
**Dissenting, Bjorkman, Judge**

Nobles County District Court
File No. 53-CR-12-1086

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Kusz, Nobles County Attorney, Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Minge, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

Appellant Tyler Thomas Devries Morse challenges the district court's denial of his motion to suppress evidence asserting that there was not a reasonable, articulable suspicion of a traffic violation to support a legally proper stop of his vehicle. We reverse.

**FACTS**

In the early morning of October 20, 2012, Worthington Police Officer Joshua McCuen was on patrol in a squad car. Officer McCuen observed a vehicle leaving Worthington's downtown area at approximately 2:00 a.m. Officer McCuen testified that there are bars in downtown Worthington, that it was bar closing time, and that he decided to investigate the vehicle. The driver of this vehicle was appellant Tyler Thomas Devries Morse. Officer McCuen's squad-car video camera recorded the investigation from its fixed dashboard position facing forward from the center of the squad car.

Morse's vehicle traveled northeasterly on Second Avenue. The officer observed Morse's vehicle stop at a stop sign at a three-way, T-type intersection. The cross street is Okabena Street, which runs east-west at an angle with Second Avenue. Both streets have a single lane of travel in each direction and street parking next to the curb. Because of the angle of the intersection, a left turn would be tight; going right only requires a gentle turn. In the vicinity of the intersection between Second Avenue and Okabena Street, there are no center lines, no marked parking lanes, no lane dividers, no painted lines, no marked cross-walks, and no fog lines. The record indicates that another squad car was ahead of Morse. There is no indication that pedestrians or bicyclists were present. There

2

was one parked car on the north side of Okabena Street near the intersection. There are curbs and sidewalks on each road.

The squad video indicated, and the district court found, that Morse signaled a right turn onto Okabena Street, and his vehicle's left rear tire came close to or touched what appears to be the unmarked center seam of the road. After traveling a short distance, Morse made a left turn onto a street with marked lanes. Still following the Morse vehicle, Officer McCuen observed it move "towards the center line of the road, almost touching it, and moving back into its lane." He described the weaving as "[v]ery slight. Almost a drift." Officer McCuen testified that the Morse vehicle's movement within its lane was significant to him because "most of the time drivers are impaired when they are drifting like that, at that time of day" and that "[a]t that time I believed the driver was impaired."

Officer McCuen activated his flashing squad-car lights, initiating a traffic stop of the Morse vehicle. The officer approached the driver and asked for identification and proof of insurance. Officer McCuen noticed that the driver, Morse, had watery eyes and a strong odor of alcohol emanated from the vehicle. Officer McCuen asked Morse to step out of the vehicle and conducted a horizontal-gaze-nystagmus test, "observe[d] all six clues of impairment," and observed Morse "sway side to side and front to back approximately 2 inches." Morse refused to complete other standard field sobriety tests and Officer McCuen arrested Morse.

Once at the Nobles County jail, Officer McCuen read Morse the Minnesota Motor Vehicle Implied Consent Advisory. When asked whether he would like to speak to an

3

attorney, at 2:20 a.m., Morse indicated that he did. At 3:06 p.m., after multiple phone calls, Morse spoke to an attorney and agreed to take a breath test. The breath test indicated that Morse's alcohol concentration was .19.

Morse was charged with one count of driving while impaired in violation of Minn. Stat. § 169A.20, subd. 1(1) (2012), and one count of driving while impaired with an alcohol concentration of .08 within two hours of driving in violation of Minn. Stat. § 169A.20, subd. 1(5) (2012). Because of two qualified prior impaired driving incidents, Morse was charged with second-degree driving while impaired and subject to penalties as enumerated in Minn. Stat. § 169A.25, subd. 2 (2012).

At a contested omnibus hearing, Morse challenged the traffic stop and asked the district court to dismiss the charges. Officer McCuen testified that he saw the vehicle make a wide right turn where "it crossed over the center of the road almost striking a vehicle that was parked on the [north] side of [Okabena Street]." Morse testified, denying the driving offenses. The squad video and police report were submitted as evidence.

At the outset, the district court reviewed the constitutional standard for traffic stops. Then it discussed the record stating that the squad video was "significantly less compelling than [Officer McCuen's] testimony indicated, and the video evidence clearly does not support [Officer McCuen's] recollection that [Morse's] vehicle nearly struck a vehicle parked along the curb" as Morse took a right turn. But it also found that the video "supports [Officer McCuen's] assertion that [Morse's] vehicle had made a [right turn] that was not 'as close as practicable to the right-hand curb or edge of the roadway'

4

as prohibited by Minn. Stat. § 169.19, subd. 1(a)." In making this finding, the district court observed that this "statutory standard is admittedly somewhat vague." The district court found that Morse's vehicle drifted close to the center line of another street prior to being stopped and that the in-lane movement together with the officer's reliance on his training and experience were relevant in determining the legality of the stop. The district court concluded that based on the totality of all these circumstances, the stop was supported by reasonable, articulable suspicion of criminal activity.

Morse also challenged the admission of the breath test results, claiming he had not consented. While Morse's case was pending in the district court, the United States Supreme Court issued *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In *McNeely*, the appellant challenged the constitutionality of his breath test. *Id.* at 1557. On July 23, 2013, the district court held a second contested omnibus hearing in which Officer McCuen testified again and Morse's implied-consent advisory audio recording was submitted to the district court. The district court took the constitutional matter under advisement. On October 20, 2013, the Minnesota Supreme Court issued *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013). In *Brooks*, the Minnesota Supreme Court applied the United States Supreme Court's decision in *McNeely*, rejecting the single-factor exigency standard and reinforcing the totality-of-the-circumstances test when evidence is seized without a warrant. *Id.* at 567, 572; *see also id.* at 573 (holding that Minnesota implied consent law is constitutional). On November 25, 2013, the district court denied Morse's motion to suppress the breath test results. Morse had a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, was found guilty of operating a motor vehicle with an alcohol

5

concentration of .08 within two hours of operation, and the prosecutor dismissed the remaining charges.

## DECISION

Morse's appeal raises two issues: the validity of the initial traffic stop and the denial of his motion to suppress the results of the breath test.

"We review a district court's determination regarding the legality of an investigatory traffic stop and questions of reasonable suspicion de novo." *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). "When reviewing a pretrial order on a motion to suppress evidence, we may independently review the facts and determine whether, as a matter of law, the district court erred in suppressing or not suppressing the evidence." *State v. Askerooth*, 681 N.W.2d 353, 359 (Minn. 2004). We will not set aside a district court's findings of fact unless clearly erroneous. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). We defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

In Minnesota, we require police officers to have an "objective individualized articulable suspicion of criminal wrongdoing *before* subjecting a driver to an investigative stop." *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 187 (Minn. 1994). With their training and experience, officers are generally given deference to "properly act on suspicion that would elude an untrained eye" of a layperson. *State v. Britton*, 604 N.W.2d 84, 88-89 (Minn. 2000). We do not inquire into or defer to the officer's subjective reasoning for initiating a traffic stop and whether it was justified; rather we require that there be an objective justification for the stop. *See State v. Koppi*,

6

798 N.W.2d 358, 363-64 (Minn. 2011) (quoting *State v. Speak*, 339 N.W.2d 741, 745 (Minn. 1983)); *see also State v. Schrupp*, 625 N.W.2d 844, 846-47 (Minn. App. 2001) (stating that an "officer's subjective good-faith belief" that "criminal activity may be afoot" is not sufficient and the officer "must articulate specific facts" that reasonably justify the stop), *review denied* (Minn. July 24, 2001). The stop cannot be "the product of mere whim, caprice, or idle curiosity." *State v. Johnson*, 257 N.W.2d 308, 309 (Minn. 1977) (citation omitted). Similarly, because the focus is on objective facts, we do not speculate whether a stop is pretextual and set aside such stops. *See State v. Olson*, 482 N.W.2d 212, 214 (Minn. 1992) (stating that the supreme court has consistently held "that if there is an objective basis for it, an arrest or search is lawful even if the officer . . . based his or her action on the wrong ground or had an improper motive"); *see also State v. Everett*, 472 N.W.2d 864, 867 (Minn. 1991) (stating that our supreme court follows the United States Supreme Court case *Scott v. United States*, 436 U.S. 128, 98 S. Ct. 1717 (1978), in determining that a search will be upheld if there is an objective legal basis for an arrest or search, even if the police officer had an improper motive).

Minnesota law does "not require much" to justify a law-enforcement officer's traffic stop. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). "Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *Id.* However, some apparent violation is required; a single observation of a swerve within the vehicle's lane, alone, is insufficient to justify a traffic stop. *State v. Brechler*, 412 N.W.2d 367, 368-69 (Minn. App. 1987).

7

Appellant asserts that Officer McCuen made an unconstitutional stop of his vehicle. We recognize that the constitution requires an ascertainable standard for police to stop a person. *See Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 1858 (1983). A criminal statute may be unconstitutionally vague if it provides the police with absolute discretion to decide what activities violate the statute. *See City of Chicago v. Morales*, 527 U.S. 41, 61, 119 S. Ct. 1849, 1861 (1999) (stating that the Illinois Supreme Court held that loitering ordinance was unconstitutionally vague because it provided police absolute discretion to decide what activities constituted loitering); *see also Kolender*, 461 U.S. at 858, 860-61, 103 S. Ct. at 1858-60 (concluding statute requiring a person to provide "credible and reliable" identification was unconstitutionally vague because police had complete discretion to determine what conduct satisfied the statute). The problem with a vague statute is that it "lets enforcers define who is a violator in the first place." *In re Welfare of B.A.H.*, 845 N.W.2d 158, 164 (Minn. 2014).

Here, we must determine whether or not Officer McCuen had a reasonable, articulable suspicion of criminal activity, specifically a traffic violation, based on Morse's driving conduct. The district court found that Morse's left rear tire came close to or touched the unlined center seam of the roadway, but specifically discredited the officer's testimony that Morse's vehicle threatened the parked car. The district court did not find that Morse crossed an unmarked center line to enter the opposing lane of travel, but simply found that Morse violated a traffic law by failing to turn "as close as practicable to the right-hand curb or edge of the roadway." Minn. Stat. § 169.19, subd. 1(a). The district court concluded "the basis for the traffic stop in this case . . . rests on a

8

relatively thin reed -- on the officer's observation of one arguably insignificant violation of a traffic law on a street without a marked center line" and a single slight drift.

The statute at issue is as follows:

> Subdivision 1. **Turning at intersection**. The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> (a) [B]oth the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

*Id.*[1] The statute requires that a driver's turn be "as close as practicable" to the curb.

"Practicable" is defined by *Black's Law Dictionary* as "reasonably capable of being accomplished; feasible in a particular situation." *Black's Law Dictionary* (10th ed. 2014). What constitutes "as close as practicable" is highly dependent on the "particular situation" present. The statute presumably does not require that drivers "hug the curb" through the turn or begin and end the turn in lanes used for parking when there are no cars parked in those lanes. Conversely, if one encounters a double-parked delivery van in one's lane of travel, turning from or into the opposing lane of travel may be as close as practicable. Driving a bus, or semi-truck, or car with a trailer, one may find it physically necessary to turn into the opposing lane. Therefore, the interpretation of the right-turn

---

[1] Subdivision one, subpart a of Minn. Stat. § 169.19 was amended in 2014 to read: "Except as otherwise provided in this paragraph, both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway. When necessary to accommodate vehicle configuration, a driver is permitted to make a right turn into the farthest lane of a roadway with two or more lanes in the same direction in order to make a U-turn at a reduced conflict intersection, if it is safe to do so." 2014 Minn. Laws ch. 287, § 10. Because appellant's offense occurred prior to the effective date of the amendment, we only consider the earlier version of the statute.

traffic law, and a determination of whether it was violated, requires analysis of all the circumstances surrounding the turn.

The definition of "practicable" is not only flexible and subject to differences of opinion, it is inherently ambiguous and vague. Failing to turn "as close as practicable" is not measurable by some objective standard like failing to stop at a stop sign, violating the speed limit, or violating the boating-hours statute. *See State v. Gresser*, 657 N.W.2d 875, 879-80 (Minn. App. 2003) (concluding boating-hours statute, which restricted operating personal watercraft one hour before sunset, was not unconstitutionally vague because sunrise and sunset times are easily accessible). The district court acknowledged that the turn statute is "somewhat vague." Because the statute permits police officers to decide, subjectively, when a turn is not "as close as practicable" to the curb, we note the risk that a statute is unconstitutionally vague unless it is narrowly construed. *See State v. Crawley*, 819 N.W.2d 94, 105 (Minn. 2012) ("we can uphold [the statute's] constitutionality by construing it narrowly").

Here, our standard for a permissible stop only requires a reasonable articulable suspicion. *See Britton*, 604 N.W.2d at 88 (requiring reasonable articulable suspicion to justify a stop). When combined with vagueness of the right-turn law, the subjectivity of the standard is compounded. This creates a level of officer discretion that is of constitutional concern. To avoid this problem of compounded subjectivity, we conservatively construe the right-turn statute in effect at the time of this offense so as not to criminalize the right turn of a vehicle at this angled intersection with single lanes of travel when the vehicle does not enter the opposing lane of travel.

10

It does not appear from the district court's findings of fact and the squad video that Morse crossed into the opposing lane of traffic when he turned. We conclude that, on these facts, Morse's right turn did not violate this narrowed construction of the then-effective version of Minn. Stat. § 169.19, subd. 1(a).

Because we conclude that Morse's driving conduct was not a violation of a traffic law, there is no traffic violation to supplement the single weave observed by Officer McCuen and the officer's training and experience that led him to subjectively believe that Morse may be driving while impaired. We also avoid the district court's concerns that the right-turn basis for the stop was "significantly less compelling than the Officer's recollection," that the video evidence was unconvincing, and that the stop of appellant "rests on a relatively thin reed." Accordingly, we conclude that this case is similar to our supreme court's *Brechler* case because the driving conduct was too slight to warrant reasonable suspicion of a traffic violation and that the stop was improper. *See Brechler*, 412 N.W.2d at 369.

Because we conclude that Morse's traffic stop was improper, the evidence obtained as a result of that stop is not admissible. Therefore, we reverse the district court's denial of Morse's motion to suppress the evidence obtained from the traffic stop, and we reverse Morse's conviction.

Given our conclusion that Morse's conviction must be reversed, we do not need to reach the second issue dealing with the constitutional adequacy of his consent to the breath test. Nonetheless, we note that the supreme court in *Brooks*, 838 N.W.2d 570-72, upheld warrantless searches premised on voluntary consent. Under the standard of that

11

decision, the record supports the district court's determination that Morse's consent was voluntary.

**Reversed.**

**BJORKMAN**, Judge (dissenting)

I respectfully dissent. Because the district court's findings of fact are not clearly erroneous and its legal conclusion that the traffic stop was valid is sound, I would affirm.

This court reviews de novo the legality of an investigatory stop. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). But we will not set aside a district court's findings of fact unless they are clearly erroneous. *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

A limited investigatory stop of a motorist is permissible "if the state can show that the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quotation omitted). An officer's observation of a traffic violation, no matter how insignificant, generally "forms the requisite particularized and objective basis for conducting a traffic stop." *Id.* at 823. That is precisely the situation in this case.

The district court found that Officer McCuen saw Morse's vehicle make a wide right turn. The district court discredited the officer's testimony that the turn was so wide that Morse's vehicle nearly struck a vehicle parked on the other side of the street but found that the driver's side rear tire of Morse's vehicle was near or touching the center seam of the road. And the district court expressly found that there were no parked vehicles or other obstacles to Morse's right as he turned, so the turn "wasn't as close to the right curb . . . as it could have been." Morse does not challenge these findings. Nor does he challenge the conclusion that this driving conduct violates the law requiring drivers to execute such turns "as close as practicable to the right-hand curb or edge of the

roadway." Minn. Stat. § 169.19, subd. 1(a) (2012). Morse contends only that this traffic violation cannot justify the stop because it is "insignificant." But that is all the law requires to justify a traffic stop. *See Anderson*, 683 N.W.2d at 823; *see also Rose v. Comm'r. of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001) (stating that "[t]he factual basis necessary to maintain a routine traffic stop is minimal").

Moreover, other unchallenged findings of fact further support the validity of the stop. Moments after making the wide turn, Morse's vehicle drifted noticeably within its lane. In Officer McCuen's experience, such driving conduct often indicates impairment, particularly late at night around the time of bar closing. Viewing Morse's undisputed traffic violation and these other circumstances together, I would conclude that the traffic stop was valid.

Morse's argument regarding his breath test is similarly unavailing. A warrantless search of a person's breath, blood, or urine is valid if the person voluntarily consents to the search. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). Whether consent is voluntary is a question of fact, determined by examining the totality of the circumstances. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). Morse challenges the district court's finding that he voluntarily consented to breath testing, arguing that his consent could not have been voluntary because he was in police custody and the record does not clearly indicate whether he had the opportunity for meaningful consultation with an attorney. But the record reveals, and Morse does not dispute, that he exhibited numerous indicia of intoxication, Officer McCuen was neither coercive nor aggressive, and Morse received a standard implied-consent advisory and more than 40 minutes to contact an

D-2

attorney before agreeing to and completing the testing process. This record amply supports the district court's finding that Morse voluntarily consented to the breath test. Accordingly, I would conclude that the breath test was valid and affirm in all respects.