*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1465**

Daniel Wayne Siegfried, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed June 17, 2024
Reversed
Frisch, Judge**

Dakota County District Court
File No. 19HA-CV-23-541

Joseph G. Vaccaro, The Law Office of Joseph G. Vaccaro, PLLC, St. Paul, Minnesota (for respondent)

Keith Ellison, Attorney General, Matthew A. McGuire, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Bjorkman, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant-commissioner challenges the district court's order rescinding the revocation of respondent's driver's license on the basis that law enforcement lacked a reasonable, articulable suspicion to conduct an investigatory stop. We reverse because the

district court credited the officer's observation that respondent committed a traffic violation, and the officer therefore had reasonable, articulable suspicion to conduct an investigatory stop.

## FACTS

At about 10:00 p.m. on December 9, 2022, an officer observed a car exiting the parking lot of a bar and decided to follow the car to determine if the driver was impaired. The car, which was driven by respondent Daniel Wayne Siegfried, turned onto the same road as the officer, driving in the opposite direction. The officer made an immediate mid-road U-turn to follow Siegfried.

The officer observed Siegfried travel through a four-way intersection controlled by a stop light. There was a fog line on the road on both sides of the intersection but no fog line in the intersection itself.[1] The officer testified that, when Siegfried exited the intersection, "[a]pproximately half" of his car was over the fog line. Siegfried "correct[ed]" his vehicle shortly thereafter. The officer followed Siegfried a while longer and later stopped Siegfried.

Appellant Minnesota Commissioner of Public Safety revoked Siegfried's driver's license. Siegfried petitioned for rescission of his license revocation, and the district court held an evidentiary hearing on the sole issue of whether law enforcement had a reasonable, articulable suspicion to justify an investigatory stop. At the hearing, Siegfried testified that

---

[1] We follow the parties in referring to the white line on the far-right side of the roadway as the "fog line."

he was distracted by his observation of a car making a U-turn behind him and was looking in his side mirror when he "touched" the fog line. He did not know at the time that the car making the U-turn was a police car. Siegfried did not dispute that he crossed the fog line.

At the conclusion of the evidentiary hearing, the district court stated on the record that it was going to rescind the revocation of Siegfried's license. The district court acknowledged that "there's case law that the Commissioner cited that I could easily fall upon . . . and say you went over the fog line once, and that's enough for an officer to stop you." The district court nevertheless reasoned that there was no violation of the law because the road swerved slightly on the other side of the intersection, and because Siegfried corrected his lane position "immediately." The district court stated that something like that "could happen to anyone who is not driving and drinking," was "so de minimis" that the court did not believe there was a basis for the stop, and that the stop was "premature." The district court concluded by stating that it thought that it was "doing the appropriate thing reminding police officers that you have to be a little more patient before you make these stops and put people through testing and things of that nature."

Following the evidentiary hearing, the district court filed a written order rescinding Siegfried's license revocation. The district court found that Siegfried was driving over the fog line when he exited the intersection "but immediately corrected and traveled within his lane," and did not commit any additional traffic violations while the officer followed him for several more blocks. The district court credited the officer's testimony that they were investigating Siegfried because they saw him leave a bar parking lot and that Siegfried "crossed the fog line." The district court then concluded that the officer lacked reasonable,

3

articulable specification to stop Siegfried because Siegfried "was distracted by the abrupt U-Turn made by [the officer] which contributed to his momentary lack of lane discipline" and "immediately corrected into his proper lane after passing through the intersection."

The commissioner appeals.

## DECISION

The commissioner argues that the officer had reasonable, articulable suspicion to make an investigatory stop because a single lane violation is a sufficient basis to stop a motor vehicle. We agree.

The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "But an officer does not violate the prohibition if [the officer] stops a vehicle to conduct an investigation based on the officer's reasonable suspicion that the driver is engaging in criminal activity." *Soucie v. Comm'r of Pub. Safety*, 957 N.W.2d 461, 463-64 (Minn. App. 2021), *rev. denied* (Minn. June 29, 2021). "[T]o justify . . . an investigatory stop, the police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (quotations omitted). "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *Id*. We review "a district court's determination of reasonable suspicion de novo, but accept[] the district court's

4

factual findings unless they are clearly erroneous." *Kruse v. Comm'r of Pub. Safety*, 906 N.W.2d 554, 557 (Minn. App. 2018).

Minnesota Statutes section 169.18, subdivision 7(1) (2022), provides that when a road is "divided into two or more clearly marked lanes for traffic," "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." A violation of this law can occur simply by driving *on* a marking that divides lanes. *Soucie*, 957 N.W.2d at 465 (concluding that an officer had reasonable suspicion that a driver moved their car from the lane in violation of Minn. Stat. § 169.18, subd. 7(1) (2020), "when the outside edge of his tires touched the inside edge of the painted fog line"); *Kruse*, 906 N.W.2d at 560 (concluding that an officer had reasonable suspicion to support an investigatory stop under Minn. Stat. § 169.18, subd. 7(a) (2016), when the driver drove on the fog line). The district court found, and it is undisputed, that Siegfried drove *over* the fog line. Therefore, based on the undisputed facts, the district court erred by concluding that the officer did not have reasonable suspicion to believe that Siegfried had committed a traffic violation.

Siegfried argues that the statute only requires a driver to remain in a lane "as nearly as practicable" and that the district court concluded that he remained within his lane as "as nearly as practicable" by finding that the road was not straight and Siegfried corrected his position immediately. Siegfried contrasts his case to *State v. Dean*, where we declined to conclude that a driver stayed in their lane as nearly as practicable because there was "nothing in the record to suggest that it was impracticable to remain fully within [the

driver's] lane" and the driver failed to explain why his conduct was "evidence of staying in the lane as nearly as practicable." No. A17-1113, 2018 WL 1462328, at *2 (Minn. App. Mar. 26, 2018). It is true that the district court made findings of fact, which are supported by record evidence, that the road was not entirely straight and that Siegfried corrected his position relatively quickly. But the district court made no finding that Siegfried drove his vehicle within the lane "as nearly as practicable." And there is no evidence in the record suggesting that it was objectively impracticable for Siegfried to continue driving within the lane markings after driving through the intersection, such that it would have been unreasonable for the officer to suspect that Siegfried violated a traffic law. *Cf. Anderson*, 683 N.W.2d at 824 (concluding that the officer lacked a reasonable, articulable suspicion for a stop because his interpretation of the law was erroneous, and he therefore lacked a particularized and objective basis for stopping the driver); *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001) (citing *State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996)) (explaining that "it is not necessary that the police detect an actual violation of the law" to conduct an investigatory stop). And none of the findings by the district court negate the undisputed fact that Siegfried drove over the fog line, which formed the basis for the officer's reasonable, articulable suspicion necessary to conduct an investigatory stop.

Because the officer observed Siegfried drive over the fog line, they had reasonable, articulable suspicion to conduct an investigatory stop. We therefore reverse the district court's ruling rescinding the revocation of Siegfried's license.

**Reversed.**

6