Wayne Stanley WILKES, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. A09–435.

Court of Appeals of Minnesota.

Jan. 12, 2010.

William H. Skees, W. Harvey Skees, P.A., Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Mary R. McKinley, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by WORKE, Presiding Judge; SHUMAKER, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant challenges the district court's order sustaining revocation of his driver's license in an implied-consent proceeding. Appellant argues that the district court (1) erred in concluding that the officer had a

reasonable, articulable suspicion to stop appellant based on traffic-law violations, and (2) abused its discretion in failing to view the scene of the traffic stop. Because appellant's driving conduct and the totality of the circumstances support a reasonable, articulable suspicion of criminal activity and because the district court did not abuse its discretion in declining to view the scene of the traffic stop, we affirm.

## FACTS

Around midnight on April 29, 2008, Officer Robert Schletty of the Bloomington Police Department observed a vehicle stopped in the right, curbside lane of westbound Old Shakopee Road, just west of the Bloomington Ferry Road. There are two westbound lanes in this particular stretch of Old Shakopee Road. When Officer Schletty first saw the stopped vehicle, he was about 50 to 100 feet from the intersection and also travelling west in the same curbside lane of Old Shakopee Road. The vehicle was located an additional 50 to 100 feet past the intersection. As Officer Schletty approached, the vehicle slowly drove away, and Officer Schletty observed "the right tires of the vehicle cross[ ] into the gutter area of the curb." Officer Schletty initiated a traffic stop less than a mile later, and appellant Wayne Stanley Wilkes was identified as the driver of the vehicle. Appellant was subsequently arrested for driving while impaired and a test revealed appellant's alcohol concentration to be in excess of .08.

Appellant's driver's license was revoked under the implied-consent law, and appellant petitioned for judicial review of the revocation under Minn.Stat. § 169A.53, subd. 2(a) (2006). At the implied-consent hearing, appellant's counsel stated that the only issue was whether Officer Schletty had a reasonable, articulable suspicion of criminal activity when he stopped appellant. Officer Schletty was the only witness. Officer Schletty has 13 years of experience as a licensed law-enforcement officer. He testified that it was unusual to see someone stopped in the driving lane at this time of night. He thought the driver may have been impaired or experiencing mechanical problems. Officer Schletty estimated that the posted speed limit for this area was about 35 to 40 m.p.h. and that he had to slow down and reduce his speed below 30 m.p.h. as he came through the intersection because appellant's car was stopped in the lane ahead. While Officer Schletty testified that appellant was impeding traffic in that no other vehicle could have driven through the lane where appellant was stopped and that such stopping was a citable offense, he also testified that there was an open lane to the left of appellant's lane and that there were no vehicles piled up behind appellant. Officer Schletty further testified that there are signs in the area prohibiting parking and that he did not know how long appellant's vehicle had been stopped.

Officer Schletty testified that there were no adverse weather or road conditions that caused appellant's tires to leave the blacktop and cross into the concrete gutter and that such movement can indicate that a driver is impaired. Once pulled over, appellant told Officer Schletty that he was stopped because a person in a nearby bar parking lot was telling him he had a headlight out. Appellant did in fact have one headlight out.

On cross-examination, appellant's counsel asked Officer Schletty how wide the road was where he observed the driving conduct, asserting that there was "extra room on this side so a person can make a right-hand turn without impeding traffic." Officer Schletty did not recall if the lane was wider, but testified that there was no right turn there. At this point, appellant's counsel moved for a continuance based on "surprise," stating he was unable to effectively cross-examine the witness. Appel-

lant's counsel told the district court that he had maps and photographs of the scene and made an offer of proof that he "could conclusively prove with actual photographs that the right lane is in fact much wider than the left lane which would have a direct bearing as to both the basis for the stop and the explained driving conduct."

When asked by the district court why he did not have the proper witnesses that day, appellant's counsel stated he was "relying on an officer who patrols this road, and I understand he says he doesn't know, but I guess I thought he should" and reiterated his offer to pay costs for a continuance. Respondent objected, stating that the hearing had been scheduled "for some time"; the parties had "been here once before on this matter"; and respondent was "prepared to proceed." The district court denied the motion.[1] Appellant's counsel then moved for a viewing by the district court of the area in question, generally citing "the Minnesota Rules of Evidence."

Appellant's counsel told the district court that he had personal knowledge that the road was wider at this point:

> I've lived two blocks from this section of road for six months. My sister's lived within a half mile of this intersection for two years. I travel it biweekly, if not more. I've made right-hand turns using that road. I know the landscape of the road, and I—I can't say 100 percent because all humans are subject to error, but I can tell you from my own experience that the road is not equal.

The district court asked Officer Schletty if he had any reason to believe appellant's counsel was incorrect and Officer Schletty said no, reiterating that he did not know the measurements of the lanes, but emphasized there was no right turn at that particular point. The district court then took the motion under advisement, but never explicitly ruled on the motion.

The district court concluded that Officer Schletty had a reasonable, articulable suspicion of criminal activity when he stopped appellant. Relying on *State v. Wagner,* the district court reasoned that, because an officer has an objective basis for stopping a vehicle when a traffic violation has occurred, 637 N.W.2d 330, 335–36 (Minn. App.2001), Officer Schletty had a sufficient legal basis to stop appellant both for impeding traffic under Minn.Stat. § 169.15 (2006) and for failing to keep his vehicle within a single lane under Minn.Stat. § 169.18, subd. 7(a) (2006). The district court also found that the totality of the circumstances, including both Officer Schletty's experience and the observed driving conduct, amounted to a reasonable, articulable suspicion of criminal activity sufficient for stopping appellant. This appeal follows.

### ISSUES

I. Did the district court err in ruling that the officer had a reasonable, articulable suspicion to stop appellant when his vehicle was stopped in a lane of traffic, impeding traffic, and then swerved out of the driving lane?

II. Did the district court abuse its discretion in declining to view the scene of the traffic stop?

### ANALYSIS

**I. The district court did not err in ruling that the officer had a reasonable, articulable suspicion to stop appellant when his vehicle was stopped in a lane of traffic, impeding traffic, and then swerved out of the driving lane.**

 We review a district court's determination regarding the legality of an

---

1. This ruling is not on appeal.

investigatory traffic stop and questions of reasonable suspicion de novo. *State v. Britton,* 604 N.W.2d 84, 87 (Minn.2000). Findings of fact are reviewed under the clearly erroneous standard. *Id.* Both the U.S. and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A limited investigatory stop of a motorist is constitutionally permissible "if the state can show that the officer had a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *State v. Anderson,* 683 N.W.2d 818, 822–23 (Minn.2004) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *Id.* at 823; *see also Wagner,* 637 N.W.2d at 335–36 (recognizing rule).

## A. Impeding Traffic

■ Under Minnesota law, "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic," except when a reduced speed is necessary because of safety, compliance with the law, or the combination of the vehicle's weight and the grade of the highway. Minn.Stat. § 169.15. Officer Schletty testified that he had to reduce the speed of his squad car below the posted limit as he came up behind appellant, who was stopped in the same traffic lane, before appellant began driving again.

■ Appellant argues that his vehicle was only "briefly halted" and that he was not impeding the flow of traffic because there was an open lane to the left and no cars were piled up behind him. We disagree. "[T]he purpose of traffic regulation is to protect against traffic hazards," and a violation may occur "regardless of whether it appears that other traffic will be affected." *State v. Bissonette,* 445 N.W.2d 843, 845–46 (Minn.App.1989).

Appellant relies heavily on this court's unpublished opinion in *State v. Prather,* No. C0–01–1857, 2002 WL 1013558 (Minn. App. May 21, 2002). We conclude, however, that *Prather* is inapposite. First, unpublished opinions of this court are not precedential. Minn.Stat. § 480A.08, subd. 3 (2008). Second, *Prather* is factually distinguishable. In *Prather,* the officer observed a vehicle "suddenly" pull over to the curb in a no-parking zone and watched as the driver and a passenger changed seats. 2002 WL 1013558, at *1. Significantly, "[t]he officer did not claim that there was any irregularity in appellant's driving or physical behavior that would have indicated possible intoxication. The officer could not point to any illegal behavior or suspicious activity, nor was there any suggestion that appellant might need help." *Id.* at *3. *Prather* then distinguished the different "levels" of stopping—stop, stand, and park—and held that the officer did not have an adequate basis to make the stop as the vehicle had only "stood" in a no-parking zone and the officer had merely acted on a "hunch" after observing the driver swap. *Id.*

Here, Officer Schletty testified that it was unusual for a vehicle to be stopped in a traffic lane in the middle of the night and that such behavior was likely due to mechanical problems or impairment. Officer Schletty also testified that he had to alter his speed because of appellant and that appellant's driving conduct would have impeded anyone else traveling in that lane. Moreover, this is not a situation where "speed compliance" was impossible. *Cf. Satter v. Turner,* 251 Minn. 1, 10, 86 N.W.2d 85, 92 (1957) (holding "slow speed"

statute inapplicable where driver needed time to achieve proper rate of speed upon entering highway). Appellant was not at a traffic juncture where he needed time to match the rate of moving traffic, such as the entrance to a highway; he should not have been stopped in the road in the first place.

Accordingly, the district court did not err in concluding that Officer Schletty had an objective basis for performing a traffic stop when he observed appellant impeding the flow of traffic in violation of Minn.Stat. § 169.15.

### B. Driving Within a Single Lane

■ Similarly, Minnesota law requires that "[w]hen any roadway has been divided into two or more clearly marked lanes for traffic ... [a] vehicle shall be driven as nearly as practicable entirely within a single lane." Minn.Stat. § 169.18, subd. 7(a). A "roadway" is "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder." Minn.Stat. § 169.01, subd. 31 (2006). The "shoulder" is the "part of a highway which is contiguous to the regularly traveled portion of the highway and is on the same level as the highway ... [and] may be pavement, gravel, or earth." *Id.*, subd. 73 (2006).

It is undisputed that this portion of Old Shakopee Road contained two lanes of travel in each direction. Appellant also does not dispute that his tires crossed into the concrete gutter abutting the curb, but argues that he did not leave his lane because Officer Schletty testified that he believed appellant's traffic lane was the area between the dashed line on the left and the curb on the right. Officer Schletty also testified, however, that he considered the lane to be the "blacktop."

Section 169.01, subdivision 31, expressly excludes the shoulder from the roadway.

Here, the concrete gutter serves as the shoulder to Old Shakopee Road as it is contiguous to the regularly traveled blacktop portion and on the same level as the highway. *See* Minn.Stat. § 169.01, subd. 73. Appellant left the roadway, and consequently his lane, when his tires left the blacktop surface and traveled into the foot-wide concrete gutter abutting the blacktop and the base of the curb. *See Wagner,* 637 N.W.2d at 336 (concluding trooper had an objective, reasonable, and articulable basis for investigatory stop when driver drove on shoulder and then crossed center line). There were no apparent external influences causing appellant to drive outside of a single lane and appellant does not argue otherwise.

Because he left the roadway, appellant's case is distinguishable from *State v. Brechler,* in which the driver never left the road and only swerved within his own lane. 412 N.W.2d 367, 368 (Minn.App.1987). Appellant's case is further distinguishable because appellant's traffic-lane stop in the middle of the night preceded the "swerve" and was itself sufficient to suggest a violation had occurred, whereas there was no driving conduct suggesting criminal activity in *Brechler. Id.*

Therefore, the district court did not err in concluding that Officer Schletty was justified in stopping appellant after observing appellant drive outside of a single lane and into the gutter in violation of Minn. Stat. § 169.18, subd. 7(a).

### C. Totality of the Circumstances

■ In addition, officers make assessments based on all of the surrounding circumstances, appropriately relying on inferences and deductions that might elude someone without similar training. *Berge v. Comm'r of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985). "The police may briefly

stop a person and make reasonable inquiries when an officer observes unusual conduct that leads the officer to reasonably conclude in light of his or her experience that criminal activity may be afoot." *In re Welfare of G. (NMN) M.,* 560 N.W.2d 687, 691 (Minn.1997).

Officer Schletty was the only witness at the hearing. On appeal, due regard is given to the district court's opportunity to evaluate witness credibility. *Snyder v. Comm'r of Pub. Safety,* 744 N.W.2d 19, 22 (Minn.App.2008). In crediting Officer Schletty's years of experience and finding that his deductions regarding appellant's possible impairment were reasonable based on the observed driving conduct, the district court correctly concluded that the totality of the circumstances supported a reasonable, articulable suspicion of criminal activity.

Appellant attempts to discredit Officer Schletty by arguing that he observed the driving conduct at issue from almost two miles away. As respondent points out, a misunderstanding seems to have occurred regarding the distance at the hearing. Officer Schletty initially testified that he observed appellant's vehicle at a distance of "fifty to a hundred feet east of the intersection" and that appellant "was that distance past the intersection," thus a distance of approximately 100 to 200 feet total. On cross-examination, however, the following exchange took place between appellant's counsel and Officer Schletty:

COUNSEL: Okay. You indicate you were about 5,200 feet from the intersection and that [appellant's] vehicle was almost equal that distance past the intersection?

OFFICER SCHLETTY: Correct.

COUNSEL: So we're talking about 10,-000–some feet, correct?

OFFICER SCHLETTY: Correct.

"Fifty to a hundred" is phonetically similar to 5,200. No one caught and corrected the misunderstanding at the implied-consent hearing. As the fact-finder, the district court did not clearly err in crediting Officer Schletty's initial distance estimate instead of the almost two-mile [2] viewing range suggested on cross-examination.

In sum, we hold that the district court did not err in concluding that Officer Schletty had an objective basis for performing a traffic stop after he observed appellant violate both Minn.Stat. § 169.15 by impeding traffic and Minn.Stat. § 169.18, subd. 7(a), by failing to drive his vehicle within a single lane, and that the stop was further supported by the totality of the circumstances.

## II. The district court did not abuse its discretion in declining to view the scene of the traffic stop.

"Evidentiary rulings on materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are committed to the sound discretion of the [district] court and will be the basis for reversal only where that discretion has been clearly abused." *Barna v. Comm'r of Pub. Safety,* 508 N.W.2d 220, 221 (Minn. App.1993). Appellant argues that the district court abused its discretion in both failing to view the scene of the traffic stop and failing to rule on appellant's oral motion requesting the viewing after Officer Schletty did not recall the width of the road where appellant was stopped. At the hearing, appellant's counsel did not cite any authority in support of his request, referring only to "the Minnesota Rules of Evidence." The district court subsequently took the motion under advisement. On

**2.** There are 5,280 feet in a mile, and 10,560 feet in two miles.

appeal, appellant cites Minn. R.Crim. P. 26.03, subd. 10(a), to support his position.

Rule 26.03, subdivision 10(a), provides:

> When the court is of the opinion that a viewing by the jury of the place where the offense being tried was committed, or any other place involved in the case, will be helpful to the jury in determining any material factual issue, it may in its discretion, at any time before the closing arguments, order that the jury be conducted to such place.

The rules of criminal procedure "govern the procedure in prosecutions for felonies, gross misdemeanors, misdemeanors, and petty misdemeanors." Minn. R.Crim. P. 1.01. Implied-consent proceedings, however, are civil in nature, not criminal. *Warner v. Comm'r of Pub. Safety*, 498 N.W.2d 285, 288 (Minn.App.1993), *review denied* (Minn. May 28, 1993); *see also Wagner*, 637 N.W.2d at 337 (holding presumptions, burdens of proof, and evidentiary rules are different in implied-consent proceedings than in criminal proceedings). In civil proceedings, "[a] finder of fact may view a site in order to better understand the testimony and evidence" as long as it is clear that the finder of fact did not gather evidence. *MT Props., Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383, 390 (Minn.App. 1992). But "the granting of a view is in the sound discretion of the [district] court." *Sjodin v. Lund*, 277 Minn. 473, 480, 152 N.W.2d 718, 723 (1967).

When asked by the district court why he had not brought a motion at least putting respondent on notice of the possibility of such a request, appellant's counsel again cited "surprise" based on Officer Schletty's memory concerning the scene of the traffic stop. As respondent points out, the parties had already appeared once in this matter, and the record reflects that appellant had several months to prepare for the January 2009 hearing from the filing of appellant's petition for review in May 2008.

Appellant argues that viewing the scene, including its layout, geography, and signage, relates not only to the legality of the driving conduct, but also to Officer Schletty's credibility. The district court asked Officer Schletty if he had any reason to doubt the "wider" lane characterization proffered by appellant's counsel. Officer Schletty responded that he did not know the measurements of the lanes, telling the district court:

> No, I don't know. I would assume that they are equal, but one could be wider than the other. But at that particular area, there's no turning until you hit the Yukon area, which is a street. This is a business parking lot. Down there, there is no—there's no right turn lane right there. So regardless if it's wide or narrow, you can't stop a vehicle in that traffic lane.

The district court judge also stated that she did not feel photographs of the scene would add to the proceeding because Officer Schletty agreed that the road may be wider. As stated above, credibility determinations are the province of the district court. *Snyder*, 744 N.W.2d at 22. The district court heard appellant's arguments regarding Officer Schletty's allegedly poor recollection and explanation of the scene of the traffic stop, and appellant's need for additional evidence. In ruling that Officer Schletty had a reasonable, articulable suspicion of criminal activity to justify stopping appellant, the district court implicitly denied appellant's motion, thereby concluding that the facts were sufficiently established by Officer Schletty's testimony. We also note that the width of the road was largely irrelevant to the question of whether Officer Schletty had a sufficient basis for stopping appellant as the totality of the circumstances, derived from the ob-

served driving conduct and Officer Schletty's years of experience, suggested possible impairment and created a reasonable, articulable suspicion of criminal activity.

Based on the civil nature of implied-consent proceedings and a district court's broad discretion in evidentiary matters, we hold that the district court did not abuse its discretion in declining to view the scene of the traffic stop.

## DECISION

The officer's testimony and the totality of the circumstances were sufficient to support a reasonable, articulable suspicion of criminal activity on account of the observed traffic-law violations. The district court did not abuse its discretion in declining to view the scene of the traffic stop in the implied-consent proceeding.

**Affirmed.**