**Aaron Neil SARBER, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A12–0110.

Court of Appeals of Minnesota.

Aug. 27, 2012.

Richard L. Swanson, Chaska, MN, for appellant.

Lori Swanson, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by RODENBERG, Presiding Judge;

CLEARY, Judge; and WILLIS, Judge.*

## OPINION

RODENBERG, Judge.

In this implied-consent case, Aaron Neil Sarber appeals from the revocation of his driver's license and impoundment of his license plates. He argues that the traffic stop underlying the revocation order was unlawful because it was based solely on the officer's observation of appellant twice flashing his high beams as the officer approached. We conclude that the Commissioner of Public Safety failed to establish that the police officer had a reasonable, articulable suspicion of a traffic violation, and accordingly, we reverse.

## FACTS

A Mille Lacs County sheriff's deputy was on patrol during the late night hours of August 19, 2011, when he noticed appellant's vehicle approaching from the other direction. The road was straight and flat, and the deputy could see for a long distance. Appellant's vehicle was less than 2,000 feet away when the deputy first saw it, and the low-beam headlights were illuminated. When appellant's vehicle was within about "six to seven hundred feet away" from the deputy, appellant flashed his high beams once at the deputy. When the vehicles were "a couple hundred" feet closer, appellant again flashed his high beams. These flashes were brief in duration, lasting "less than a second, maybe half a second. . . . just like you would flash somebody high beams, on and off," according to the deputy's testimony. Both flashes occurred in quick succession, "within a few seconds" of one another. The deputy assumed that appellant was signal-

ing him to dim the headlights on the patrol car. The deputy did not testify that his vision was impaired as a result of the two brief flashes.

The deputy conducted a traffic stop based solely on the flashing headlights, which he believed to be a violation of Minn. Stat. § 169.61. This statute provides that "[w]hen the driver of a vehicle approaches a vehicle within 1,000 feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver." *Id.* The deputy believed that this statute required the use of low beams at all times within a thousand feet of an approaching vehicle. During the encounter with appellant after the traffic stop, the deputy observed evidence of appellant's intoxication.

The Commissioner of Public Safety subsequently issued an order revoking appellant's driver's license and impounding his license plates. Appellant filed an implied-consent petition pursuant to Minn.Stat. § 169A.53 (2010), seeking rescission of the revocation order on the basis that the traffic stop was unlawful. Appellant maintained that his behavior in twice flashing the high beams did not violate the statute because there was no evidence that the brief flashing projected "glaring rays . . . into the eyes of the oncoming driver." Minn.Stat. § 169.61(b).

Following the implied-consent hearing, the district court issued an order denying appellant's petition. It found that appellant's headlights had been "directly [and] frontally visible to oncoming traffic" when he flashed his high beams. The court concluded that the phrase "glaring rays" is "not limited to the narrow definition urged

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

by [appellant]," and that the commissioner was not required to show "that the light was distracting or impairing the oncoming vehicle." This appeal followed.

## ISSUE

Does a driver's behavior in briefly flashing the high-beam headlights at an oncoming car provide objective justification for an investigatory traffic stop when there is no evidence that the headlights blinded, impaired, or distracted another driver and where there is no other evidence of unlawful or suspicious driving conduct?

## ANALYSIS

 Appellant argues that the deputy's testimony was insufficient to establish reasonable justification for the traffic stop. When considering the justification for an investigatory traffic stop, this court reviews the district court's factual findings for clear error. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 243 (Minn.App. 2010). But, we review de novo the legality of an investigatory traffic stop, including whether the officer had a reasonable suspicion for the stop. *Id.* at 242–43.

 Both the federal and state constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A limited, investigatory stop of a motorist is reasonable if the state can demonstrate that the officer had a particularized and objective legal basis for suspecting the person of violating the law. *State v. Anderson*, 683 N.W.2d 818, 822–23 (Minn.2004). An officer may lawfully stop a driver for violating a traffic law, no matter how insignificant the violation. *State v. George*, 557 N.W.2d 575, 578 (Minn.1997). However, a stop is not justified if it is based on a mistaken interpretation of the law. *Id.* at 578–79 (holding that a traffic stop was unlawful because it was based on the officer's erroneous belief that

the defendant's headlight configuration violated the law); *see also Anderson*, 683 N.W.2d at 823–24 (holding that "an officer's mistaken interpretation of a statute may not form the particularized and objective basis for suspecting criminal activity necessary to justify a traffic stop").

**I. Minnesota law does not prohibit drivers from briefly flashing their high beams in a manner that does not blind or impair approaching drivers.**

 Appellant argues that the officer lacked an objective basis for the stop because briefly flashing one's high beams does not violate the law, absent evidence that the high beams blinded, distracted, or impaired another driver. This argument turns on statutory interpretation. Statutory interpretation presents a question of law, which this court reviews de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn.2011).

Minnesota law requires drivers who are within a thousand feet of an approaching vehicle to "use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver." Minn.Stat. § 169.61(b). Our courts have not directly addressed the question of whether this statute prohibits briefly flashing or flickering one's high beams at another driver.

Examining the language of the statute, the legislature's inclusion of the term "glaring" leads us to conclude that briefly flashing or flickering one's high beams at an oncoming vehicle is not a violation, unless another driver was at least temporarily blinded or impaired by the lights. As the statute does not define the term "glaring," we must look to its ordinary and customary meaning. *See State v. Taylor*, 594 N.W.2d 533, 535 (Minn.App.1999) (observing that courts must construe non-

technical words "according to common and accepted usage"). A light is "glaring" if it shines "intensely *and blindingly.*" *The American Heritage Dictionary* 770 (3d ed.1992) (emphasis added). Earlier versions of the statute also included the term "dazzling," which commonly means "[t]o dim the vision of, especially to *blind with intense light." Id.* at 478 (emphasis added); *see* Mason's Minn.Stat. § 2720–50(a), (c) (1927) (prohibiting head lamps and auxiliary lamps from projecting "glaring or dazzling light" to persons in front of the vehicle).[1] Thus, the statute prohibits use of headlights in a manner that blinds or impairs other drivers.

█ The larger context of the language in Minn.Stat. § 169.61 also supports our interpretation. *See Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000) (noting that courts must construe statutory language in light of the surrounding sections). The statute as a whole provides for the safe use and configuration of headlights, and its evident purpose is to prevent hazards caused by the use of high beams in a way that blinds, distracts, or impairs other drivers.

Briefly flashing one's high beams at another driver does not, standing alone, amount to use of a light "intensely and blindingly." A bright light of extremely short duration does not amount to "glaring rays." Accordingly, it is a common practice for drivers to flash their high beams to warn other drivers of hazards, or to signal others to adjust their own headlights. Although by no means authoritative, the Minnesota Driver's Manual (published by the Minnesota Department of Vehicle Safety) recommends that drivers flash their headlights to alert a sleepy or distracted driver approaching in the wrong lane.[2] Our unpublished cases also document instances where state troopers have flashed their high beams to signal approaching drivers to adjust their headlights. *See State v. Schmuhl,* No. A11–566, 2012 WL 1813278, at *1 (Minn.App. May 21, 2012) (noting that the deputy flashed his high beams to signal the approaching driver to dim her headlights); *Gertken v. Comm'r of Pub. Safety,* No. C0–96–319, 1996 WL 495024, at *1 (Minn. App. Sept. 3, 1996) (noting that the trooper flashed his headlights at an oncoming driver to signal her to dim her high beams). In some instances, then, flashing one's high beams may serve to avert risk rather than cause it.

The parties and the district court have focused on several unpublished cases as persuasive authority.[3] In *State v. Wold,* the issue was whether the officer had an objective basis for a traffic stop when the respondent failed to immediately dim his high beams after rounding a curve and facing a hill. *See* No. A03–1940, 2004 WL 1489054, at *2 (Minn.App. Jul. 6, 2004). The respondent testified that he did not immediately see the officer's approaching

---

1. This court may consider former versions of the statute when the current language is ambiguous, as it is here. *See* Minn.Stat. § 645.16(5) (2010).

2. *See* Minn. Dep't of Pub. Safety, Driver & Vehicle Servs. Div., *Minnesota Driver's Manual,* 81–82, https://dps.mn.gov/divisions/dvs/forms-documents/Documents/Minnesota_Drivers_Manual.pdf (last visited July 27, 2012).

3. Although not precedential, unpublished opinions may be persuasive. *See* Minn.Stat. § 480A.08, subd. 3 (2010) ("Unpublished opinions of the Court of Appeals are not precedential."); *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App.1993) (recognizing that unpublished opinions may be persuasive). We elect to address several unpublished cases herein because the parties discussed those cases extensively in the briefing.

vehicle due to the hill and background city lights, but he immediately dimmed his headlights when he saw the vehicle. *Id.* Although the trooper observed the glow of respondent's high beams in the distance, he "did not testify that respondent's headlights were glaring or otherwise projecting into his eyes." *Id.* Thus, this court held that the trooper "was mistaken in his belief that respondent violated the law merely because he failed to dim his headlights within 300 to 500 feet of the trooper's oncoming vehicle." *Id.*

*Wold* recognizes that merely illuminating one's high beams within 1,000 feet of another vehicle is not, by itself, sufficient to establish a violation; the lights must project glaring rays at another driver. Here, as in *Wold,* the deputy did *not* testify that the flashing high beams were glaring or projecting into his eyes. He testified only that he believed the flashing itself to be a traffic violation.

Similarly, in *Gertken,* this court upheld the validity of a traffic stop based on the driver's alleged failure to dim her high beams at any point while approaching an oncoming vehicle. 1996 WL 495024, at *1. The officer testified that the "extreme brightness" of the headlights led him to believe they were high beams. *Id.* Although the district court found that respondent had not, in fact, been using her high beams, this court upheld the validity of the stop because it was based on the officer's honest mistake of fact. *Id.* at *2. Had respondent actually been driving with her high beams on, as the officer believed, she would have been violating Minn.Stat. § 169.61. *Id.; accord State v. Opsal,* No. C3–96–1187, 1997 WL 20326, at *1 (Minn. App. Jan. 21, 1997) (upholding validity of traffic stop, despite officer's mistake of fact, when he reasonably believed that respondent failed to dim the high beams "because of a distracting amount of glare

coming from [respondent's] headlights"), *review denied* (Minn. Mar. 18, 1997). Thus, the officer's testimony regarding the "extreme brightness" of the headlights was central to this court's holding.

Finally, in *Holm v. Comm'r of Pub. Safety,* a published case, the respondent failed to dim his high beams at any time for oncoming traffic and was also observed drifting into the parking lane on the side of the roadway. 416 N.W.2d 473, 474 (Minn. App.1987). This court held that the stop was justified because "[a] driver must dim his lights when approaching a vehicle and failure to do so is a violation of Minn.Stat. § 169.61." *Id.* at 475. However, in *Holm,* the respondent failed to dim his high beams at any time. The court therefore did not need to address whether the "glaring" requirement was satisfied. *Id.* at 474–75.

Read in combination, the cases all recognize that failing to dim the high beams violates the statute when the lights glare into other drivers' eyes. The cases do not support the proposition that brief flashing of high-beam headlights violates the statute regardless of whether the lights are "glaring rays ... projected into the eyes of the oncoming driver." Minn.Stat. § 169.61(b).

Other jurisdictions are divided as to whether similarly worded statutes prohibit drivers from flickering or flashing their high beams at oncoming traffic. In a case addressing facts virtually identical to those present here, the Wisconsin Court of Appeals held that a traffic stop was not justified on the basis of the driver's flashing his high-beam headlights. *Waukesha Cnty. v. Meinhardt,* 246 Wis.2d 672, 630 N.W.2d 277, 2001 WL 541127, *1–2 (Wis.Ct.App. May 23, 2001) (table of unpublished opinions). The relevant statute provided that, when approaching another vehicle within 500 feet, the driver "shall dim, depress or

tilt the vehicle's headlights so that the glaring rays are not directed into the eyes of the operator of the other vehicle." *Id.* at *2 (quoting Wis. Stat. § 347.12(1) (1997–98)). The court held that the plain language of the statute "does not prohibit the flashing of one's high-beam headlights" at oncoming traffic. *Id.* It noted that the Wisconsin Legislature had recently amended the statute to clarify that it did not "prohibit an operator from intermittently flashing the vehicle's high-beam headlamps at an oncoming vehicle whose high-beam headlamps are lit." *Id.* (quoting 1999 Wis. Sess. Laws 967).

Likewise, a New York appellate court held that a similar law did not prohibit a driver from briefly flashing her high beams several times at oncoming traffic. *People v. Lauber*, 162 Misc.2d 19, 617 N.Y.S.2d 419, 419–20 (N.Y.App. Term 1994). The statute required drivers to operate their headlights "so that dazzling light does not interfere with the driver of the approaching vehicle." *Id.*, 617 N.Y.S.2d at 419 (quoting N.Y. Veh. & Traf. Law § 375(3) (McKinney 1986)). The court held that a mere showing that the defendant "flipped" or "flicked" her high beams at approaching vehicles was insufficient to establish a violation. *Id.*, 617 N.Y.S.2d at 419–20.

The Alaska Court of Appeals held that a traffic stop *was* justified, under a statute nearly identical with Minnesota's, when the defendant flashed his high beams at an oncoming trooper. *Kunz v. State*, No. A–10273, 2009 WL 4893594, at *1–2 (Alaska Ct.App. Dec. 16, 2009). In that case, however, the driver had modified his truck's lighting so that his bright auxiliary "moose lights" also activated whenever he flashed

his high beams. *Id.* at *1. Thus, the combination of the high beams and the "moose lights" blinded the trooper, and he testified that he "saw spots for several seconds." *Id.*

Finally, the North Dakota Supreme Court held that a state law prohibited drivers from flashing their high beams for any length of time. *State v. Westmiller*, 730 N.W.2d 134, 139 (N.D.2007). The court interpreted the statute at issue as expressly requiring the use of low-beam headlights whenever a driver is approaching another vehicle within a minimum distance.[4] *Westmiller*, 730 N.W.2d at 138. While recognizing that "drivers may be accustomed to quickly flashing their high-beam headlights at an oncoming vehicle as a signal to dim headlights," it concluded that the statute's plain language did not permit any such momentary use of the high beams. *Id.* at 138–39.

As in *Meinhardt* and *Lauber*, Minnesota's statute does not expressly prohibit briefly flashing one's high beams. Had the legislature intended such a result, it could have provided more specific language, such as that interpreted in *Westmiller* to require the use of low-beam headlights at all times within some minimum distance. The district court's interpretation in this case effectively removed the "glaring" requirement from the statute. The common meaning of this term as "blinding," and the statute's overarching purpose to avoid road hazards caused by intensely blinding lights, support appellant's position. Thus, we conclude that the language of Minn.Stat. § 169.61(b) does not prohibit drivers from momentarily flashing their high beams at oncoming traffic, so long as the flashing is brief and

---

4. The statute at issue in *Westmiller* contained language similar to Minn.Stat. § 169.61(b), but further provided that low-beam headlights "must be deemed to avoid glare at all times, regardless of road contour and loading." N.D. Cent.Code § 39–21–21(1) (1997). No such provision is present in the Minnesota statute.

conducted in such a manner that it does not blind or impair other drivers.

## II. The officer in this case lacked an objective basis for the traffic stop.

At the implied-consent hearing, the deputy testified that the sole basis for the traffic stop was appellant's action in twice flashing his high beams at the deputy. The district court found that this flashing was directly visible to oncoming traffic. However, the deputy did not testify that the high beams blinded, distracted, or otherwise impaired him or other drivers.[5] To the contrary, the deputy affirmed that what he saw amounted to two "very quick flash[es]," each less than a second in duration. The deputy testified that he assumed appellant was merely trying to signal him to dim his own headlights. The record reveals no other articulable facts, besides the headlight-flashing, that would have supported the stop.[6] In fact, the deputy testified that he was specifically attentive to the possibility of other traffic violations, but saw none.

Because there was no indication that this brief flashing projected "glaring rays . . . into the eyes of the oncoming driver," appellant's behavior did not violate the statute. Minn.Stat. § 169.61(b). The commissioner thus failed to meet his burden in establishing a reasonable justification for the stop. As the record unquestionably reflects that the sole basis for the

traffic stop was the deputy's mistaken interpretation of the law, the stop was unjustified. *Cf. George*, 557 N.W.2d at 578–79 (holding that the officer did not have an objective basis for a traffic stop when it was based on an erroneous interpretation of the law). The district court therefore erred as a *matter of law* in denying appellant's implied-consent petition seeking rescission of the revocation of his driver's license.

## DECISION

The commissioner did not satisfy his burden of establishing objective justification for the investigatory traffic stop of appellant's vehicle. The stop was based solely on the deputy's mistaken belief that briefly flashing one's high-beam headlights violates a traffic law. As there was no evidence that the headlights in this instance blinded, distracted, or impaired another driver, appellant's vehicle did not project "glaring rays . . . into the eyes of the oncoming driver" within the meaning of Minn.Stat. § 169.61(b).

**Reversed.**

---

5. The record is silent as to the presence of other traffic besides appellant and the deputy.

6. For example, the deputy did *not* express any belief, based on surrounding circumstances, that the flashing headlights were a signal for help. *Cf. State v. Carlile*, No. 17270, 1999 WL 301422, at *1, *3–4 (Ohio Ct.App. May 14, 1999) (affirming traffic stop based on flashing high beams where officer testified that he

believed the driver may have been signaling for police assistance, as it was not yet dark enough outside to necessitate high beams); *State v. Campbell*, 173 Vt. 575, 789 A.2d 926, 927–28 (2001) (upholding traffic stop when appellant's car was pulled off to the side of the road on a dark, stormy night, and flashed its headlights at a marked patrol car; the officer reasonably believed the car was signaling for assistance).