*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0286**

Jon Earl Miller, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 4, 2014
Affirmed
Peterson, Judge**

Otter Tail County District Court
File No. 56-CV-12-2262

Robert M. Christensen, Steven J. Wright, Robert M. Christensen, P.L.C., Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, James E. Haase, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

Appellant challenges the district court's order sustaining his license revocation under the implied-consent law, arguing that the vehicle stop was unlawful and that

breath-test results should have been suppressed because he did not voluntarily consent to the test. We affirm.

## FACTS

Otter Tail County sheriff's deputy Zachary Eifert saw a red pickup truck on County Highway 41 in Otter Tail County that he believed was traveling in excess of the speed limit. As he followed the truck at a distance of approximately 200 to 250 yards, he saw the truck cross over the fog line five times and over the center line twice. After stopping the truck and identifying the driver as appellant Jon Earl Miller, Eifert arrested him for driving while impaired (DWI) and transported him to the Otter Tail County Detention Center.

At the detention center, Eifert read Miller the standard implied-consent advisory form, which stated that Minnesota law required him to take a test to determine whether he was under the influence of alcohol; test refusal is a crime; he had the right to consult an attorney; and any unreasonable delay would be considered a refusal. Miller said that he understood, declined to contact an attorney, and agreed to take a breath test, which showed an alcohol concentration of 0.14. Eifert testified that Miller was cooperative throughout the stop and the testing procedure. The operator who administered the breath test, A. Mueller, also noted that Miller was "very cooperative."

Miller contested the license revocation, asserting that Eifert did not have a reasonable articulable suspicion of criminal behavior to support the stop and that Miller did not voluntarily consent to the breath test because the implied-consent advisory was coercive. The district court sustained the license revocation.

2

Miller filed a notice of appeal on February 4, 2013.  On April 17, 2013, the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), was issued.  Miller's appeal was stayed pending the Minnesota Supreme Court's decision in *State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).  After the *Brooks* decision was released on October 23, 2013, this court lifted the stay in Miller's appeal.

## D E C I S I O N

### I.

Miller argues that the stop of his truck was "constitutionally unlawful," because Eifert did not have a reasonable articulable suspicion that Miller was engaged in criminal activity to support an investigative stop.  The United States and Minnesota Constitutions prohibit unreasonable searches and seizures.  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  But a peace officer may make an investigative stop if "the stop was justified at its inception by reasonable articulable suspicion, and . . . the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop in the first place."  *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (quotations omitted).  "Reasonable suspicion must be based on specific, articulable facts that allow the officer to . . . articulate . . . that he or she had a particularized and objective basis for suspecting the seized person of criminal activity."  *Id.* at 842-43 (quotation omitted).  Reasonable suspicion requires more than a hunch or a whim, but it is a lesser standard than probable cause.  *Id.* at 843.  Reasonable suspicion may be based on the officer's

3

observation of even an insignificant traffic violation. *State v. Doebel*, 790 N.W.2d 707, 709 (Minn. App. 2010), *review denied* (Minn. Jan. 26, 2011).

We review the district court's factual findings regarding an investigative stop for clear error and its legal conclusions de novo. *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 468 (Minn. App. 2012). This court defers to the district court's assessment of witness credibility. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 245 (Minn. App. 2010).

Eifert testified that he saw Miller's truck cross the fog line five times and the center line twice. Eifert noted that he saw the truck at 2:30 a.m., a time when it was common to observe impaired driving because of bar closing time. The district court concluded that this was sufficient to provide Eifert with a reasonable articulable suspicion of impaired driving. Miller argues that Eifert was "foggy" in his testimony and that a squad video showed Miller driving in a "smooth and unexceptional" manner. But the district court found Eifert credible and accepted his testimony. The district court also noted that the squad video was initiated after Miller's erratic driving conduct and rejected Miller's contention that the video undermined Eifert's testimony.

Based on the totality of the circumstances, Eifert had a reasonable articulable suspicion that Miller was driving while impaired that supported his decision to make an investigatory stop. *See id.* at 244-45.

## II.

In the district court, Miller argued that evidence of the breath-test results should be suppressed because Eifert forced him to submit to a warrantless search that was not subject to a warrant exception. The district court rejected this argument, stating that

> it is clear from the record that when requested by Deputy Eifert to submit to a breath test, [Miller] consented. The breath sample was taken upon [Miller's] clear consent. Therefore, there is no reasonable basis to believe that [*McNeely*] will render [Miller's] consent involuntary or the seizure of his breath sample unlawful.

Miller now argues that the state has failed to show that, under the totality of the circumstances, he was not coerced into giving his consent to the breath test. Miller distinguishes *Brooks* because (1) Brooks had a lengthy history of DWI arrests, whereas Miller had no prior arrests and would feel the normal stress of an individual placed under arrest for the first time in his life; (2) Brooks consulted with an attorney, while Miller did not; (3) Eifert advised Miller of the consequences of refusing, but he did not advise Miller that he had a right to refuse the test; and (4) Brooks's obstreperous behavior indicated that he was not intimidated, while Miller's compliance suggests that he felt he could not refuse the test.

In *Brooks*, the supreme court acknowledged that chemical testing under the DWI and implied-consent laws is a search subject to Fourth Amendment protections; as such, a warrant is required unless the search falls under an exception to the warrant requirement. 838 N.W.2d at 568. No warrant is necessary if the subject of the search consents to the warrantless search. *Id.* Whether a person freely and voluntarily consented is determined

5

by examining the totality of the circumstances. *Id.* "Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority." *Id.* at 568-69. "'Voluntariness' is a question of fact and it varies with the facts of each case." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

The supreme court stated that an analysis of the totality of the circumstances begins with the statutory requirements of the implied-consent law: (1) anyone who drives a motor vehicle in Minnesota consents to chemical testing to determine the presence of alcohol; (2) before requiring testing, a peace officer must have probable cause to believe a person has been driving while impaired by alcohol; and (3) an advisory must be given explaining that the law requires that a driver suspected of driving while impaired must take a test, the person may consult with an attorney, and that there are consequences for refusing. *Id.* at 569. If these statutory requirements are met, the court will consider other relevant circumstances to determine whether a person consented to testing. *Id.* Among these are "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* (quoting *Dezso*, 512 N.W.2d at 880).

Next, the supreme court stated that the sole fact that there is a penalty for refusal does not coerce a driver to take a test. *Id.* at 570. Under Minnesota law, a driver may refuse the test and may not be forced to submit to testing, although he may suffer a penalty for making that choice. *Id.* The supreme court recognized that someone in custody may be more susceptible to coercion, but the fact of arrest alone is not sufficient

6

to negate consent, particularly if the person is not confronted by repeated questioning or a long period in custody. *Id.* at 571. The right to consult with counsel mitigates coercion. *Id.* at 571-72. Finally, the supreme court concluded that the implied-consent advisory makes clear to an individual "that he had a choice of whether to submit to testing." *Id.* at 572.

Here, all of the statutory requirements were met; the stop and arrest were routine; nothing in the record indicates that Eifert or anyone else intimidated or sought to intimidate Miller; and Miller was advised of his right to counsel but declined the opportunity to consult with counsel. Miller's testimony at the implied-consent hearing was limited to the circumstances of the stop, and he did not indicate in any way that he did not consent to the breath test. After listening to the testimony, the district court found that Miller consented to the breath test and Miller gave a "clear consent."

We agree that the state met its burden to show that, under the totality of the circumstances, Miller voluntarily consented to the breath test and, therefore, no search warrant was necessary.

**Affirmed.**