*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1297**

Shannon Forstrom Walsh, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 23, 2016
Affirmed
Reyes, Judge**

Dakota County District Court
File No. 19AVCV15373

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Tracy Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal from an order sustaining her license revocation, appellant argues that (1) her procedural due-process rights were violated; (2) the officer lacked reasonable, articulable suspicion for the initial investigatory seizure of her person; (3) the field sobriety tests and preliminary breath test (PBT) were unlawfully obtained; (4) the breath

test was obtained in violation of the Fourth Amendment; and (5) the breath test was obtained in violation of her substantive due-process rights and the doctrine of unconstitutional conditions. We affirm.

## FACTS

At 3:15 p.m. on January 30, 2015, Deputy Ryan Googins heard over his police radio that someone had called in a driving complaint. The caller identified himself and reported that he had seen a female in a vehicle at a Kwik Trip consuming what looked like small, airline-sized bottles of alcohol. The caller stated that when he made eye contact with the driver, she became nervous and drove away. The caller noted the vehicle's license-plate number, provided it to the police, and stated that he last saw the vehicle traveling south on Highway 3 from the Kwik Trip.

Upon hearing this information, Deputy Googins ran the license plate and obtained the vehicle's make, model, and registered address. Deputy Googins provided his partner, Deputy Brian Eells, this information over the radio, and the two men headed separately to the registered address. Deputy Eells arrived first and saw a vehicle parked in the driveway. Before parking, he circled the block and, by the time he returned, the vehicle was gone. Deputy Eells radioed Deputy Googins with this update. The officers agreed that Deputy Eells would attempt to make contact with someone at the property, while Deputy Googins would attempt to locate the suspect vehicle.

Deputy Googins spotted the vehicle and saw it turn into the Dakota County Library parking lot and park in an available space. Deputy Googins pulled into the parking lot, activated his lights, and parked behind the vehicle. As Deputy Googins

2

approached appellant Shannon Forstrom Walsh, she was eating crackers and exiting her vehicle. Deputy Googins noticed an overwhelming odor of alcohol coming from the vehicle. When Deputy Googins asked appellant about the odor, she replied that she had not been drinking and suggested that the smell was coming from the crackers. Deputy Googins also noticed that appellant's eyes were watery and bloodshot.

Deputy Googins asked appellant to step out of the vehicle and take a series of tests. Appellant performed the horizontal-gaze nystagmus, walk-and-turn, and one-leg-stand tests and exhibited indicia of intoxication on all three tests, though the indicia of intoxication were subtle on the one-leg-stand test. Deputy Googins administered a PBT and placed appellant under arrest for driving while impaired (DWI). Deputy Googins read appellant the implied-consent advisory. Appellant declined to consult with an attorney. Deputy Googins offered appellant a breath test, and appellant agreed to take it. The test indicated that appellant's alcohol concentration was 0.12.

Respondent commissioner of public safety revoked appellant's driver's license. Appellant requested an implied-consent hearing. Following the hearing, the district court issued an order sustaining appellant's license revocation.[1] This appeal follows.

## D E C I S I O N

I. **Appellant's procedural due-process rights were not violated.**

Appellant first argues that respondent's act of noting a "conviction" on her driving record before she was convicted in the related criminal proceedings and before she had

---

[1] Appellant pleaded not guilty to fourth-degree DWI and the criminal case is ongoing.

3

any opportunity for judicial review in the implied-consent proceedings unconstitutionally deprived her of procedural due process. We disagree.

We review procedural due-process challenges de novo. *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 413 (Minn. 2007). But while appellant has characterized her argument as a procedural due-process challenge, she is not alleging that she was deprived of any liberty or property interest without proper procedural due process. Rather, she is alleging that the license-revocation process resulted in a premature or erroneous designation on her driving record. *Cf. id.* at 415–16 (considering whether failure to comply with 60-day hearing requirement was a procedural due-process violation); *Williams v. Comm'r of Pub. Safety*, 830 N.W.2d 442 (Minn. App. 2013) (discussing whether drivers receiving six days' notice of revocation, not seven, violated the drivers' procedural due-process rights), *review denied* (Minn. July 16, 2013). We therefore decline to address appellant's purported procedural due-process challenge.

## II. Deputy Googins had reasonable, articulable suspicion to seize appellant.

Appellant next argues that Deputy Googins's investigatory seizure of appellant was not supported by a reasonable, articulable suspicion of criminal activity. We are not persuaded.

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The brief seizure of a person for investigatory purposes is not unreasonable if an officer has a particular and objective basis for suspecting the particular person [seized] of criminal

4

activity." *State v. Harris*, 590 N.W.2d 90, 99 (Minn. 1999) (alteration in original) (quotation omitted). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). The reasonable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted), and more than an "inchoate and unparticularized suspicion," *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). We review de novo the district court's legal determination that Deputy Googins had reasonable, articulable suspicion for the seizure. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). We review findings of fact for clear error. *Id.* at 243.

The district court correctly determined that Deputy Googins had reasonable, articulable suspicion for the investigatory seizure of appellant. Deputy Googins received a tip, from an identified individual, suggesting that appellant was consuming alcohol in her vehicle. Deputy Googins was thus able to point to "specific and articulable facts" which reasonably warranted an investigation into whether appellant was driving while impaired. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. And this information did not have to arise from Deputy Googins's personal observation. *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980).

Appellant cites *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552 (Minn. 1985), in support of her argument that the caller provided insufficient specificity to establish the

reliability of the tip. But in *Olson*, the tipster was anonymous. *Id.* at 554. Here, the caller identified himself. Moreover, in the instant case, the caller provided specific information to establish the reliability of the tip. The caller reported that he saw appellant drinking out of small, airplane-sized bottles of alcohol and that appellant appeared nervous upon making eye contact with the caller. In contrast, in *Olson*, the anonymous tipster provided only a "bare assertion of a possibly drunk driver." *Id.* at 556. *Olson* is therefore inapposite.

Appellant further cites *Illinois v. Gates*, 462 U.S. 213, 233, 103 S. Ct. 2317, 2329 (1983), and argues that the tip was unreliable because there was no other evidence corroborating it. *Gates*, too, is distinguishable. First, *Gates* also involved an anonymous tip. Second, the relevant inquiry in *Gates* was whether the anonymous tip had been sufficiently corroborated such that it may be considered in support of a probable-cause inquiry. *Id.* at 227, 103 S. Ct. at 2326. Here, Deputy Googins needed only reasonable, articulable suspicion to conduct the investigatory seizure of appellant.

In sum, we conclude that the district court correctly determined that Deputy Googins had reasonable, articulable suspicion to support the initial investigatory seizure of appellant.

**III.  An officer needs only reasonable suspicion of criminal activity to conduct field sobriety tests and a PBT.**

Appellant argues that the field sobriety tests and PBTs are subject to the probable-cause and warrant requirements of the Fourth Amendment. We disagree.

6

Appellant's position is inconsistent with the applicable caselaw. An officer needs only reasonable, articulable suspicion of criminal activity to administer field sobriety tests and a PBT. *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981); *State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (holding that administration of field sobriety testing based on officer's observations of odor of alcohol and Klamar's bloodshot and watery eyes was reasonable); *State v. Vievering*, 383 N.W.2d 729, 730 (Minn. App. 1986) (stating that an officer may request a PBT on the basis of specific and articulable facts), *review denied* (Minn. May 16, 1986). Appellant's reliance on Colorado and Oregon law is thus unpersuasive because it is contrary to binding Minnesota precedent.

Appellant contends that *Juncewski* and its progeny are no longer good law in light of *Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013). But appellant misinterprets *McNeely*. *McNeely* stemmed from a warrantless, nonconsensual blood draw that was unlawfully based on the exigency created by the natural dissipation of alcohol in the bloodstream. *Id*. at 1558. Because *McNeely* addressed only a single-factor exigency exception to the warrant requirement, it cannot be read to require probable cause prior to administering field sobriety tests or a PBT.

Finally, appellant asserts that the consent exception to the warrant requirement was not applicable. Because the field sobriety tests and PBT were not searches under the Fourth Amendment, no warrant was required. We therefore need not address whether an exception to the warrant requirement applies.

**IV.    The warrantless breath test was constitutional because appellant consented.**

Appellant argues that the breath test was an unconstitutional search because Deputy Googins did not obtain a warrant and because there is no applicable exception to the warrant requirement. These arguments are without merit.

The United States and Minnesota Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is considered a search for Fourth Amendment purposes. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). "A search conducted without a warrant is per se unreasonable unless an exception applies." *Ellingson v. Comm'r of Pub. Safety*, 800 N.W.2d 805, 807 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). Consent is one exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The state must show by a preponderance of the evidence that consent was given freely and voluntarily. *Id.* Voluntariness is determined by examining the totality of the circumstances. *Id.* This includes examining "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Diede*, 795 N.W.2d 836, 853 (Minn. 2011) (quotation omitted). The question of whether consent was voluntary is a question of fact, and is reviewed under the clearly erroneous standard. *Id.* at 846.

The district court concluded that appellant voluntarily consented to the breath test. Alternatively, the district court concluded that the search was lawful under the search-incident-to-arrest exception. We agree with the district court but address only the former justification. In examining the totality of the circumstances, the district court noted that

8

Deputy Googins read appellant the implied-consent advisory, appellant was given an opportunity to consult with an attorney, and appellant agreed to take a chemical test knowing that she had the option to refuse. In addition, the record contains no indication that Deputy Googins exhibited force or that his actions were otherwise deceptive, coercive, or intimidating. *Brooks*, 838 N.W.2d at 568. The record includes no facts to suggest that appellant's will was overborne or that she was not able to freely make a decision regarding the breath test. *Id.* Therefore, the district court did not clearly err in concluding that appellant voluntarily consented to the breath test and that appellant's consent provided a valid exception to the warrant requirement.

Appellant argues that, because she was arrested and "threatened" with other crimes through the implied-consent advisory, her consent was not voluntary. But our supreme court rejected this argument when it stated that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. Although the choice to submit or refuse a breath test may be a difficult one, the decision is not an act coerced by the officer. *Id.*

V.      **Appellant's substantive due-process rights were not violated and there is no merit to her unconstitutional conditions argument.**

Appellant argues she has a fundamental right to refuse a warrantless breath search, and as such, Minnesota's implied-consent law is unconstitutional because it does not satisfy the strict-scrutiny demands of substantive due process. Appellant further argues that penalizing test refusal is an unconstitutional condition. We disagree.

9

Whether a statute is constitutional is a question of law that is reviewed de novo. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). A statute should be upheld "unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt." *Id.* at 182. Minnesota statutes are presumed constitutional. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014).

Appellant's argument that her substantive due-process rights were violated rests on the premise that *State v. Bernard* was wrongly decided by the Minnesota Supreme Court. 859 N.W.2d 762 (Minn. 2015), *cert. granted*, 136 S. Ct. 615 (2015). But this court has no authority to overrule supreme court precedent. *See State v. Adkins*, 706 N.W.2d 59, 63 (Minn. App. 2005) (noting this court's role as "an error-correcting court"). In *Bernard*, the supreme court held that a warrantless breath test is constitutional as a search incident to arrest. 859 N.W.2d at 772. The court found that no fundamental right was implicated by the test-refusal statute because there is no "fundamental right to refuse a constitutional search." *Id.* at 773. Applying rational basis review, the court upheld the test-refusal statute. *Id.* at 773-74. Accordingly, appellant's substantive due-process argument is foreclosed by *Bernard*.

Finally, appellant argues that the test-refusal statute violates the unconstitutional-conditions doctrine. "Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to

submit to chemical testing." *Stevens*, 850 N.W.2d at 731.  We therefore reject this argument.

**Affirmed.**